Craig B. HOGGE, Plaintiff
and Appellant,

v.

Tamra HOGGE (Jackman), Defendant
and Respondent.

No. 17782.

Supreme Court of Utah.

June 17, 1982.

Richard P. Makoff, Kent T. Yano, Salt Lake City, for plaintiff and appellant.

Tim W. Healy, Ogden, for defendant and respondent.

OAKS, Justice:

This is an appeal from an order of. the district court transferring custody of the parties' minor sons from appellant husband to respondent wife. The case requires us to clarify the relationship between two legal principles: first, the requirement that a court modify a decree awarding custody of a minor child only where warranted by a showing of a substantial change in circumstances; and, second, the court's obligation to decree whatever custody arrangements serve the best interests of the child.

The parties were divorced in May, 1979, when their twin sons were nineteen months old. At that time, respondent was unable to care properly for the two sons because she was experiencing emotional problems attendant to the divorce, and the court awarded custody to appellant and visitation rights to respondent. A year later, respondent sought to obtain custody of the twins, alleging significant changes in circumstances since the divorce. At the hearing in

February, 1981, respondent presented evidence that she had overcome her emotional problems following the divorce, that she had again become a responsible and capable parent, and that she had remarried happily and could provide a loving and stable family environment for the two boys, now three years of age. On the basis of this and other evidence, the district court modified the divorce decree to transfer custody of the two boys to respondent, and this appeal was taken.

## I.

By statute, the district court has continuing jurisdiction over the subject matter of a divorce and may later make such changes in custody provisions as it determines are "reasonable and necessary" for the welfare and "best interests" of the child. U.C.A., 1953, §§ 30–3–5(1), 30–3–10. However, since a custody decree is predicated on a particular set of facts, that decree is *res judicata* and will not be modified in the absence of a showing of a "substantial" or "material" change of circumstances which warrants doing so. *Trego v. Trego,* Utah, 565 P.2d 74, 75 (1977); *Smith v. Smith,* Utah, 564 P.2d 307, 309 (1977). Thus, this Court has held that where there is no allegation of a substantial or material change of circumstances, a petition to modify a custody decree should be dismissed. *Perkins v. Perkins,* Utah, 522 P.2d 708 (1974) (visitation rights). *See also Cody v. Cody,* 47 Utah 456, 469, 154 P. 952, 957 (1916) (custody, child support, alimony, etc.). Similarly, we have said that a custody decree should not be modified unless changed circumstances are demonstrated. *Nielsen v. Nielsen,* Utah, 620 P.2d 511, 512 (1980); *Anderson v. Anderson,* 13 Utah 2d 36, 39, 368 P.2d 264, 265–66 (1962).

From these authorities, it appears that the trial court's decision whether to modify the provisions of a custody decree to transfer custody to another party involves two steps: (1) an initial decision whether there are changed circumstances warranting the exercise of the court's continuing jurisdiction to reconsider the custody award, and, if so, (2) a subsequent decision as to the manner in which custody should be modified, if at all.

In theory or in practice, some decisions of this Court seem to have ignored this two-step or bifurcated approach to the modification of custody awards. In these cases, it is unclear whether a showing of changed circumstances is a threshold requirement for the court's reconsideration of a custody award or whether the changed circumstances are merely one part of the evidence relevant to the court's consideration of the welfare or best interests of the child. Thus, some cases appear to ignore the initial question of changed circumstances and address themselves immediately to determining the best interests of the child. *Bingham v. Bingham,* Utah, 575 P.2d 703 (1978); *Plumb v. Plumb,* Utah, 555 P.2d 1205 (1976); *Finnegan v. Finnegan,* Utah, 535 P.2d 1159 (1975); *Smith v. Smith,* 1 Utah 2d 75, 262 P.2d 283 (1953). In other cases, the rule of changed circumstances is merely noted in passing, but its demonstration is assumed or the issue is subsumed in the court's determination of the best interests of the child. *Kallas v. Kallas,* Utah, 614 P.2d 641, 643, 645 (1980); *Johnson v. Johnson,* 7 Utah 2d 263, 267–68, 323 P.2d 16, 19 (1958). Still other cases have stated but not applied the rule, and instead seem to have based their decisions solely on the "welfare" or "best interest" of the child, *Nielsen v. Nielsen, supra; Motzkus v. Motzkus,* 17 Utah 2d 154, 406 P.2d 31 (1965), or partly on the presence or absence of changed circumstances and partly on the best interests of the child. *Smith v. Smith, supra; Trego v. Trego, supra.*

After careful review of all the foregoing cases, we expressly re-affirm and adopt the bifurcated procedure implicit in the language of *Perkins v. Perkins, supra,* and *Cody v. Cody, supra,* in which the decision whether to modify custody arrangements follows two steps. Under that procedure, a court would not reopen the custody question until it had first made a threshold finding of substantially changed circumstances. This would protect the custodial

parent from harassment by repeated litigation and protect the child from "ping-pong" custody awards. In applying the bifurcated procedure that is followed in Oregon, the court in *Remillard and Remillard*, 30 Or. App. 1111, 569 P.2d 651, 653 (1977), emphasized "the importance of a stable and secure homelife for children who are shifted from one parent figure to another and required to make adjustments attendant upon such changes." In apparent response to the importance of stability in custody arrangements, many states have adopted a bifurcated procedure for considering petitions to modify custody awards. *E.g., Black v. Black*, 114 Ariz. 282, 560 P.2d 800 (1977); *Smith v. Smith*, Fla.App., 212 So.2d 117 (1968); *Matter of Marriage of Greisamer*, 276 Or. 397, 555 P.2d 28 (1976); *Goldstein v. Goldstein*, 115 R.I. 152, 341 A.2d 51 (1975); *Raven v. Cecil*, 262 S.C. 509, 205 S.E.2d 837 (1974); *Masek v. Masek*, 90 S.D. 1, 237 N.W.2d 432 (1976); *Gokey v. Gokey*, 127 Vt. 334, 248 A.2d 738 (1968).[1]

■ Accordingly, we hold that in the future a trial court's decision to modify a decree by transferring custody of a minor child must involve two separate steps. In the initial step, the court will receive evidence only as to the nature and materiality of any changes in those circumstances upon which the earlier award of custody was based. In this step, the party seeking modification must demonstrate (1) that since the time of the previous decree, there have been changes in the circumstances upon which the previous award was based; and (2) that those changes are sufficiently substantial and material to justify reopening the question of custody. The trial court must make a separate finding as to whether this burden of proof has been met. If so, the court, either as a continuation of the same hearing, or in a separate hearing, will proceed to the second step. However, where that burden of proof is not met, the

trial court will not reach the second step, the petition to modify will be denied, and the existing custody award will remain unchanged.

■ In the second step, having found that a substantial and material change in circumstances justifies a reconsideration of the custody award, the trial court must consider the changes in circumstance along with all other evidence relevant to the welfare or best interests of the child, including the advantage of stability in custody arrangements that will always weigh against changes in the party awarded custody. The court must determine *de novo* which custody arrangement will serve the welfare or best interests of the child, and modify, or refuse to modify, the decree accordingly.

■ A similar two-step procedure should be followed where the petition to modify a custody decree requests a material change in visitation rights. *See, e.g., Perkins v. Perkins, supra.*

## II.

■ In this case, the district court properly followed the bifurcated procedure. It is apparent that a material circumstance relied upon in originally awarding appellant custody of the infant twins was the fact that respondent was then unable to care for the children because of emotional illness attendant to the divorce. At the hearing on the petition to modify, respondent produced ample evidence that since the divorce she had overcome her emotional problems and had again become a capable, responsible parent. Based on this evidence, the district court specifically found that respondent's "emotional stability had returned" and concluded "that a substantial change of circumstances has occurred since [appellant] was awarded custody of the minor children in May 1979 in that [respondent's] emotion-

1. The use of a bifurcated procedure in efforts to modify decrees in other areas of the law has long sustained the principle of repose and the finality of judgments. For example, a federal court will not exercise its equitable discretion to modify or set aside the prospective effect of an injunction without a threshold showing of grievous wrong evoked by "new and unforeseen conditions." *United States v. Swift & Co.*, 286 U.S. 106, 119, 52 S.Ct. 460, 464, 76 L.Ed. 999 (1932); Fed.R.Civ.P. 60(b)(5); *Annot.*, 14 A.L.R.Fed. 309 (1973).

al problems have been overcome." [2] This finding, which is amply supported by the evidence, is sufficient to justify relitigation of the question of custody. Hence, the court properly proceeded to the second step in the bifurcated process—a *de novo* consideration of all evidence bearing on the question of the best interests of the children.

Relying on U.C.A., 1953, § 30–3–5(1), appellant argues that a court should not change the custodial parent unless such a change is both "reasonable and necessary" for the welfare of the children. Appellant directs our attention to the fact that the district court made no finding that appellant was incapable (or even less capable than respondent) of caring for the children or that the children's welfare had suffered while in his custody. Indeed, at the conclusion of the hearing on the modification of custody, the district court observed:

Both the father and the mother appear to be good citizens . . . [w]ell-adjusted in society, loving of the children, desirous of rearing them, conscientious in doing the best they can for them.

Since the district court found no fault with the care of the children in his custody, appellant contends that it was neither "reasonable" nor "necessary" to transfer their custody to respondent, and the court's order doing so would arbitrarily uproot them and engender emotional harm.

■ Appellant's argument puts too narrow a construction on the standard for modification of custody. The court is not required to determine merely what is "reasonable and necessary" for the welfare of the child. Rather, it must decide what is "reasonable and necessary" for the "*best interests*" of the child—a standard which may frequently and of necessity require a choice between good and better. U.C.A., 1953, § 30–3–10.

■ In any determination of the best interests of the child, it is appropriate for the trial court to consider the quality of the child's present custody arrangement, the length of time the child has spent in the present arrangement, and the insecurity and emotional upheaval the child may suffer as a result of any modification in custody. Recognizing the importance of a stable environment, we have repeatedly enunciated the principle that:

Notwithstanding the desires and contentions of the parties, the welfare of the children is the paramount consideration of the courts, and where custody has been determined, and the children appear to be comparatively well adjusted and happy, they should not be compelled to change their home unless there appears some substantial reason for doing so.

*Trego v. Trego,* 565 P.2d at 75. *Accord Nielsen v. Nielsen,* 620 P.2d at 512; *Robinson v. Robinson,* 15 Utah 2d 293, 294, 391 P.2d 434, 435 (1964). But a child's interest in the stability of his or her present environment is only one of numerous factors properly considered by the trial court in its decision to grant or deny a modification in custody for the best interests of the child. *Hutchison v. Hutchison,* Utah, 649 P.2d 38 (1982); *Jorgensen v. Jorgensen,* Utah, 599 P.2d 510, 511–12 (1979).

■ Evidence at the hearing in this case demonstrated that during the entire time appellant had custody of the twins they were placed in a day-care facility because appellant and his mother and stepfather, with whom he lived, all worked full-time during the day. Appellant testified that the children would remain in day-care even after his forthcoming remarriage because he would continue to work full-time and his 17-year-old fiancee intended to complete high school and also work part-time. Appellant further testified that to facilitate the twins' adjustment to his remarriage, he and his new wife did not intend to take the twins into their new home immediately, but would leave them with appellant's mother,

**2.** The district court's conclusion is in accord with our decision in *Smith v. Smith,* Utah, 564 P.2d 307 (1977), in which we held that a parent's recovery of her physical and emotional health was a substantial change in the circumstances upon which the earlier decree was based and justified the court's redetermination of custody.

picking them up only on weekends. Finally, although appellant's fiancee testified that she had formed an emotional bond with the twins and thought of them as her own children, she stated that she wanted to wait "a long time" before having any children of her own.

With regard to respondent, evidence produced at the hearing demonstrated that she was a responsible, caring parent in whose custody the twins had blossomed during a two-month visit the previous summer. Further evidence showed that she was happily remarried in a stable family environment with a husband who was sincerely affectionate toward the twins and with whom she had a baby daughter. The district court also found that respondent's new husband was steadily employed in a responsible job, and that respondent remained at home as a full-time mother to her children. In a child custody contest, the extent to which each contesting parent could care for the child personally is an appropriate consideration for the court. *Lembach v. Cox*, Utah, 639 P.2d 197, 200 (1981).

Weighing all the evidence in the instant case, we cannot say that the district court's conclusion that the best interests of the three-year-old twins would be served by transferring their custody from appellant to respondent was "so flagrantly unjust as to constitute an abuse of discretion. ...." *Jorgensen v. Jorgensen*, 599 P.2d at 512.

The order of the district court is affirmed. Costs to respondent.

HALL, C. J., and STEWART, HOWE and DURHAM, JJ., concur.