Walter R. ELMER, Plaintiff
and Appellee,

v.

Theresa Ann ELMER, Defendant
and Appellant.

No. 19827.

Supreme Court of Utah.

May 3, 1989.

Frank M. Wells, Ogden, for defendant and appellant.

Richard G. Hamp, Ogden, for plaintiff and appellee.

STEWART, Justice:

Theresa Ann Elmer and Walter R. Elmer were married in August, 1977. A boy and a girl were born during the marriage, Rex in 1978 and Stephanie in 1980. Theresa also had one other child from a prior marriage. In January, 1983, Walter obtained a default divorce from Theresa. The decree, based on a stipulation of the parties, gave Theresa custody of both children and required Walter to provide child support in the amount of $100 per month for each child. Some nine months after the decree was entered, Walter Elmer filed for a change of custody, and the trial court awarded him custody of the daughter, Stephanie, but not Rex. Theresa Ann Elmer appeals. She asserts that the evidence does not establish a substantial change of circumstances that warrants an examination of the child's best interests, that it is in the child's best interests for custody to remain with the mother, and that the

change in custody should not have been made because of the tender years of the child. Walter Elmer cross-appeals the trial court's refusal to award him custody of Rex. We affirm.

## I. THE FACTS

Up to and including the divorce trial, Theresa Elmer was unemployed and received AFDC payments. During the months following the divorce, her gas and water were cut off for failure to pay the bills. For several months after the divorce, Theresa's boyfriend lived with her, but he left in July, 1983, when he learned that Theresa was pregnant. The home life given the four young children by Theresa was not a model. She had frequent parties in her apartment where illicit drugs were used, although she herself did not use them, and her children were allowed to stay up past their bedtime while the parties were going on.

At the time of the divorce and for several months thereafter, Walter was also unemployed. However, Walter's circumstances as a putative caretaker improved significantly. He found a job at Hill Air Force Base as a mechanic. Walter remarried, and he and his new wife live in a home which they own and where they live together with three of her children from a prior marriage, namely, a seventeen-year-old boy and two girls, fourteen and seven. Both Walter and his present wife work, but at different times of the day. When neither is home, one of her children babysits Stephanie. Walter's circumstances have improved to the point that he has a stable family life and offers Stephanie a greater likelihood of being able to provide nurturing bonds of support and security with others.

After the parties' divorce, the children stayed with Walter while Theresa attempted to get on her feet financially. In general, Theresa's ability to meet the emotional and psychological needs of Stephanie was lacking, in part because of her lack of resources and the demands made on her by the other two children. After the divorce, while Theresa was in a hospital to give birth to a fourth child, who had been fathered by her departed boyfriend, Walter again took care of Stephanie and Theresa's other children for a period of time. Theresa's babysitter arranged to have Walter take care of the children because the babysitter could not handle the children herself. Two weeks after the baby was born, Theresa requested the babysitter to contact Walter to ask if he would take care of Stephanie again. Walter indicated that he would be willing to take Stephanie, but that if he did, he intended to keep her and to seek custody. Knowing this, Theresa nevertheless gave Stephanie up to Walter. Later, Theresa had a change of mind and called Walter to obtain the child's return. Walter refused and told Theresa that he intended to file for a change of custody. Stephanie was three years old at the time.

Some three weeks after Stephanie was given to Walter and some nine months after the divorce, Walter filed a motion for a change of custody of both children. He contended *inter alia* that Theresa had permanently relinquished custody of Stephanie and that Stephanie had been abused. The trial court entered a preliminary order awarding temporary custody of Stephanie to Walter pending the outcome of the action. She has been in his custody since that time.

The evidence at the hearing on change of custody included evidence of possible abuse of Stephanie. The trial court found that if abuse had been inflicted on Stephanie, it was not inflicted by Theresa, but by her boyfriend. Walter and Theresa Elmer, various members of Walter's new family, and various friends testified as to the relative home environments and parenting abilities of Theresa and Walter and to Theresa's relinquishment referred to above. But no experts were called by either party to testify to the relative home environment or the parenting abilities of the parents.

The trial court found that there had been a change of circumstances and that it was in Stephanie's best interests for her formal custody to be changed to her father. The trial court wrote a memorandum opinion

which reviewed the situations of the parties and found:

The mother's behavior after the divorce raised some child care problems. She had a number of parties at her home, during which illegal drugs were used in the childrens' presence. She also permitted a boyfriend to move in and remain with her. After the boyfriend discovered she was pregnant, he left. The mother was then under extreme stress. She had three small children, was alone, and was expecting the birth of a fourth child. She came from Texas and, as far as the Court is aware, had no relatives in this area. Her association with others was mostly with the plaintiff's sister and with plaintiff's new step-daughter, who is a teenager. She did have other friends, such as Mrs. Smith. The friends which she enjoyed were not sufficient to off-set her predicaments, and she found herself overwhelmed by stress.

The plaintiff/father has now remarried. He has married a woman who has had five children, two are now raised. He lives in a home where both parents are employed. The home is in an area where the classification of semi-rural may apply, and the home is suited as being a proper place in which to raise a family. The home is actually under the ownership of the plaintiff's new wife. There is a good deal of stability in the father's new family setting.

At the time the mother's new baby was expected, she was without an adequate babysitter. She requested that the father come and get the child and keep it while she was confined with the new birth. The father did this.

The mother [two weeks after the new child's birth] discovered that the stress factors in her life were intolerable. The babysitter called and informed the father that he was to come and get the girl again. The father informed the babysitter that he would do so, but that in the interests of the welfare of the child and his present family, the mother was to understand that if he came and got the child, it was his intention to keep the child permanently and exercise control over it. The mother did not formally agree to the change of custody of the child, but knew that that was the father's intention. The father did get the child and has had the child since that time. When the father brought the little girl home, the child was bathed. The father's new wife discovered bruises on the child's legs, which are demonstrated by the photographs in evidence. These photographs are in a place where a child might accidentally have such injuries, but they are also in a place where immediate speculation is invited as to whether or not the child had been abused. There is some evidence that the child suffered some abuse while the mother's boyfriend lived in the home, but there is no evidence that the mother has ever abused any of her children. The discovery of the injury on the child caused the father to further resolve that he would keep custody of the girl.

For a number of months past the father has remained steadily employed, as has his new wife, and they have organized their home in a reasonable fashion. They do extend at this time a better home environment than the mother offers.

The trial court found a change of circumstances based on Theresa's indication on several occasions that she could not handle Stephanie and her having asked Walter to take Stephanie into his care when Theresa knew and understood that Walter intended to keep her and seek a formal change of custody if he took her. The court also reached that conclusion on the ground that the addition of the newborn child to Theresa's family had unduly stretched her ability to cope with the children, in part "because there is no person to assist her in any way." The court further found:

The father now has physical surroundings and a family to involve the little girl in.

The Court finds the only change in circumstances that affects Rex is the mother's addition of one more child and the stress there involved.

The Court concludes that the best interest of the two children would be served by continuing Judge Hyde's previous order and making it permanent. The Court here makes such an order.

## II. SUFFICIENCY OF THE EVIDENCE

■ On this appeal, Theresa asserts that the trial court's findings are not supported by substantial evidence, but instead of seeking to demonstrate that in her brief, she simply reiterates the evidence she adduced at trial, without regard for the evidence produced by the other side, and emphasizes the conflicts between her evidence and the trial court's findings. We, of course, presume that the findings are correct and will not set them aside without a showing that they are clearly erroneous. Utah R.Civ.P. 52(a). Since Theresa has failed to demonstrate clear error, the findings stand.

## III. CHANGED CIRCUMSTANCES TEST

Theresa also contends that the trial court erred in ruling that there were "changed circumstances" that justified the change of custody.

*Hogge v. Hogge*, 649 P.2d 51 (Utah 1982), is the leading, although not the first, authority in Utah on the changed-circumstances test. *Hogge* held that a parent seeking a change in custody of a child must first establish that there has been a substantial and material change in the circumstances upon which the original custody award was based, and second and thereafter, that a change in custody is in the best interests of the child. *See also Hirsch v. Hirsch*, 725 P.2d 1320, 1321 (Utah 1986); *Moody v. Moody*, 715 P.2d 507, 508–09 (Utah 1985); *Shioji v. Shioji*, 712 P.2d 197, 200 (Utah 1985). In *Becker v. Becker*, 694

P.2d 608, 610 (Utah 1984), we explained the necessary nexus between the changed circumstances and the welfare of the child:

> The asserted change must, therefore, have some material relationship to and substantial effect on parenting ability or the functioning of the presently existing custodial relationship. In the absence of an indication that the change has or will have such effect, the materiality requirement is not met.

But that does not mean that the circumstances of the noncustodial parent are always irrelevant to the inquiry. Since *Becker*, we have held that a change in the circumstances of the noncustodial parent may bear upon the issue of whether a change of custody may be appropriate. *Kramer v. Kramer*, 738 P.2d 624, 629 (Utah 1987) (opinion of Howe, J., concurred in by Hall, C.J., and Stewart, Assoc. C.J.); *Hirsch*, 725 P.2d at 1321. Indeed, *Hogge* was itself a case which held that a change in circumstances could be predicated on the noncustodial parent's regaining her emotional stability subsequent to the initial custody decree. 649 P.2d at 52–53. *Accord Smith v. Smith*, 564 P.2d 307 (Utah 1977).

Furthermore, the changed-circumstances rule should be applied with due regard for the policies it was designed to further. Two principal policies are served by the rule. First, the emotional, intellectual, and moral development of a child depends upon a reasonable degree of stability in its relationships to important people and to its environment. Second, the courts typically favor the one-time adjudication of a matter to prevent the undue burdening of the courts and the harassing of parties by repetitive actions. *See Hogge*, 649 P.2d at 53–54; *Kramer*, 738 P.2d at 628 (opinion of Stewart, Assoc. C.J.).[1]

---

1. That opinion states:

First, [the changed-circumstances rule] prevents an unnecessary drain on judicial resources by repetitive litigation of the same issue when the result would not be altered. Second, and more important, the requirement is intended to ensure sufficient stability in children's lives to enable them to develop relationships and a sense of familiarity with their surroundings that enhance their sense of security and self-identity, enabling them to find appropriate role models after which to pattern their lives and to develop the ability to give and receive love, a necessary requirement for achieving full potential as human beings.

■ However, the res judicata aspect of the rule must always be subservient to the best interests of the child. The courts have long held that even when an initial decree has adjudicated the best interests of a child, a subsequent proceeding could re-open that decree if material facts were not before the court, *Kallas v. Kallas,* 614 P.2d 641, 643 (Utah 1980); *Stratton v. Stratton,* 87 Idaho 118, 123, 391 P.2d 340, 342 (1964), or if the circumstances pertaining to the decree had subsequently changed, so that a new determination should be made based on a full development of all material facts. *See Hirsch,* 725 P.2d at 1321; *Hogge,* 649 P.2d at 53–54.

■ However, custody decrees are not always adjudicated, and when they are not, the res judicata policy underlying the changed-circumstances rule is at a particularly low ebb. Even more importantly, an unadjudicated custody decree is not based on an objective, impartial determination of the best interests of the child. When a child's custody is determined by stipulation or default, the custody determination may in fact be at odds with the best interests of the child. *See Friederwitzer v. Friederwitzer,* 55 N.Y.2d 89, 432 N.E.2d 765, 447 N.Y.S.2d 893 (1982).[2] When based on a stipulation or default, a custody decree may reflect such fortuitous and extraneous factors as improper influence exercised by one parent over the other or a temporary loss of resolve by one parent caused by stress, guilt, or financial distress that causes that parent to give in to the demands of the other. Whether the best interests of the child are in fact served by a custody arrangement determined by stipulation or default, therefore, is often just plainly fortuitous. By contrast, a judicial determination of custody based on the child's best interests is based on an objective and impartial comparison of the parenting skills, character, and abilities of both parents in light of a realistic and objective appraisal of the needs of a child.

Justice Howe's opinion in *Kramer v. Kramer,* 738 P.2d 624, 629 (Utah 1987),[3] in which Chief Justice Hall and the author of this opinion concurred, noted that the changed-circumstances rule should not be rigidly applied when custody was based on an unadjudicated decree:

> In such instances [i.e., a custody award made in a default divorce case], there is no determination made by the court as to which parent would be superior in raising the child. Too rigid an application of the rule advocated by the majority would lock a child into the custody of one parent or the other where there has been no determination on the merits of parenting ability of either parent and custody has been awarded only because of the default of one parent in failing to oppose the complaint of the other. A child should not be subjected to spending the rest of his or her minority in an inferior environment because of the inaction of one parent at the time custody is awarded. Many people at the time of divorce are at a low ebb in their lives. Finances are strained, and emotions run high. Many are so discouraged that they seek the easy way out. Rules on custody should not be adopted which are so in-

2. In *Friederwitzer,* 55 N.Y.2d at 94–95, 432 N.E.2d at 768, 447 N.Y.S.2d at 896, the court stated:

> The priority which is accorded the first award of custody, whether contained in court order or voluntary agreement, results not from the policy considerations involved in *res judicata* (which permits change in custody decrees when warranted by the circumstances, ...), so much as from the conceptions that stability in a child's life is in the child's best interests and that the prior determination reflects a considered and experienced judgment concerning all of the factors involved. But the weight to be given the prior award necessarily depends upon whether it results from the Trial Judge's judgment after consideration of all relevant evidence introduced during a plenary trial or, as here, finds its way into the judgment through agreement of the parties proven as part of a proceeding in which custody was not contested and no evidence contradictory of the agreement's custody provision has been presented.
> (Citations omitted.)

3. Justice Howe entitled his opinion as one concurring in the result, but it in fact represents the views of a majority of the Court and thus states the law of this jurisdiction.

flexible that they do not make allowance for these unfortunate realities.

Nevertheless, if an existing custody arrangement is not inimical to the child, the continuity and stability of the arrangement are factors to be weighed in determining a child's best interests. What particular weight to be accorded those factors in a given case must depend on the duration of the initial custody arrangement, the age of the child, the nature of the relationship that has developed between the child and the custodial and noncustodial parents, and how well the child is thriving physically, mentally, and emotionally. A very short custody arrangement of a few months, even if nurturing to some extent, is not entitled to as much weight as a similar arrangement of substantial duration. *Cf. S.N.E. v. R.L.B.*, 699 P.2d 875, 879 n. 7 (Alaska 1985). Of course, a lengthy custody arrangement in which a child has thrived ought rarely, if at all, to be disturbed, and then only if the circumstances are compelling.

The stability with which the law is primarily concerned is not the stability of the legal custody arrangement as such, but rather the stability that makes possible the psychological and emotional security that underlies a child's well-developed sense of self-worth and self-confidence. Children may live for a long time under a formal custody arrangement and yet be psychologically adrift and unable either to form close relationships or to develop fully their talents, faculties, and character. In such a situation, rigid application of the changed-circumstances rule may well harm the child. In *Burchard v. Garay*, 42 Cal.3d 531, 538–39, 724 P.2d 486, 491, 229 Cal. Rptr. 800, 805 (1986), the California Supreme Court observed:

Consider, for example, a case in which a couple separate, and in the emotional turmoil of the separation the less suitable spouse takes custody of the child. In a later custody proceeding, the noncustodial parent may be able to prove that the custodial parent is unable to provide proper care, but not that his or her ability to do so has deteriorated since the separation. In such a case the changed-circumstance rule might require the court to confirm a custody not in the best interest of the child. Or, to take another example, a child may be born out of wedlock to a woman who for some reason is not able to give it suitable care. The changed-circumstance rule would require the father, when he seeks custody, to prove not only that the mother is unsuitable, but that she has become more so since the baby's birth. In this example, the changed-circumstance rule again might require the court to endorse a custodial arrangement harmful to the child.

(Footnote omitted.)

In short, the stability that the changed-circumstances rule fosters should be viewed as a means of promoting the ultimate objective, the overall best interests of the child. *See* Utah Code Ann. § 30–3–10 (1989). *See also Kramer*, 738 P.2d at 626. Justice Howe made that point in his separate opinion in *Kramer*, 738 P.2d at 629: "The best interests of the child should never be lost sight of, and rules on change in custody should not be so rigid that this overarching principle is not followed." Certainly, it is possible that the principle of stability, if too rigidly adhered to, can result in the continuation of custody in a parent who is indifferent to, or even destructive of, the child's welfare. That possibility is less likely to occur, however, when initial custody is determined by a litigated decree.

For the above reasons, a number of courts have held that the changed-circumstances rule does not apply when custody is determined by stipulation or default. *See, e.g., Hill v. Hill*, 228 Kan. 680, 685, 620 P.2d 1114, 1119 (1980); *DeFranco v. De-Franco*, 67 Ill.App.3d 760, 765, 24 Ill.Dec. 130, 134, 384 N.E.2d 997, 1001 (1978), *called·into question by In re Custody of Horne*, 77 Ill.2d 414, 419–20, 33 Ill.Dec. 110, 112, 396 N.E.2d 499, 501 (1979); *McDonald v. McDonald*, 13 Ill.App.3d 87, 89, 299 N.E.2d 787, 789 (1973); *Friederwitzer v. Friederwitzer*, 55 N.Y.2d 89, 94–95, 432 N.E.2d 765, 768, 447 N.Y.S.2d 893, 896 (1982); *Timmons v. Timmons*, 94 Wash.2d

594, 598–99, 617 P.2d 1032, 1035 (1980). *Cf. Stewart v. Stewart,* 619 P.2d 606 (Okla. 1980); *Espersen v. Davidow,* 359 Pa.Super. 531, 519 A.2d 479, 480–81 n. 1 (1986). *Contra Burchard v. Garay,* 42 Cal.3d at 535, 724 P.2d at 488–89, 229 Cal.Rptr. at 802–03; *In re Marriage of Carney,* 24 Cal.3d 725, 731 n. 4, 598 P.2d 36, 38 n. 4, 157 Cal.Rptr. 383, 385 n. 4 (1979); *In re Custody of Andre,* 761 P.2d 809, 811–12 (Mont.1988) (recognizing a narrow exception to changed-circumstances rule where "custody was clearly inadequate since its inception"); *In re Marriage of Welby,* 89 Or. App. 412, 749 P.2d 602 (1988).

Our case law clearly reflects a flexibility in applying the changed-circumstances rule. The cases have not so strictly and rigidly applied the rule as to "forever lock a child into the custody of one parent ... [and/or subject a child] to spending the rest of his or her minority in an inferior environment...." *Kramer,* 738 P.2d at 629. *Hogge* itself, as well as cases decided subsequently, applied a less than strict changed-circumstances rule. *See Hirsch; Kramer; Hogge.*

In *Hogge,* this Court held that a noncustodial, natural mother's having regained her emotional health constituted changed circumstances. The Court also held that changing the custody from the natural father to the natural mother was in the best interests of the child, not because the father had proved inadequate as a parent, but because the environment offered by the natural father and his seventeen-year-old fiancee was not as conducive to the normal development of a child as the environment offered by the natural mother.[4] With respect to the child's best interests, the Court stated that "it is appropriate for the trial court to consider the quality of the

child's present custody arrangement, the length of time the child has spent in the present arrangement, and the insecurity and emotional upheaval the child may suffer as a result of any modification in custody." *Hogge,* 649 P.2d at 55. The Court declared that stability and the continuation of the "present environment is only one of numerous factors properly considered by the trial court in its decision to grant or deny a modification in custody for the best interests of the child." *Id.*

In sum, we hold that in change of custody cases involving a nonlitigated custody decree, a trial court, in applying the changed-circumstances test, should receive evidence on changed circumstances and that evidence may include evidence that pertains to the best interests of the child. In ruling, the trial court should give stability and continuity the weight that is appropriate in light of the duration of the existing custodial relationship and the general welfare of the child. The findings of fact should reflect that the court considered stability as a factor in the custody decision and the weight the court accorded it.

■ In this case, custody was initially determined by a stipulation that was incorporated into the divorce decree, thereby precluding a judicial determination of custody based on the best interests of the children. Theresa had legal custody of Stephanie for only nine months, during which time Walter had actual physical custody for protracted periods. Theresa was apparently overburdened by her economic circumstances and her responsibilities for her other children. She indicated a willingness to give up the custody of the child to the natural father, and he wanted to have custody of the child. The mother had difficulty handling four young children. On sever-

---

**4.** The Court also noted other factors:

    With regard to respondent [the natural mother], evidence produced at the hearing demonstrated that she was a responsible, caring parent in whose custody the twins had blossomed during a two-month visit the previous summer. Further evidence showed that she was happily remarried in a stable family environment with a husband who was sincerely affectionate toward the twins and with whom she had a baby daughter. The district

court also found that respondent's new husband was steadily employed in a responsible job, and that respondent remained at home as a full-time mother to her children. In a child custody contest, the extent to which each contesting parent could care for the child personally is an appropriate consideration for the court. *Lembach v. Cox,* Utah, 639 P.2d 197, 200 (1981).

*Hogge,* 649 P.2d at 56.

al occasions when Theresa found herself unable to cope with the children, Walter immediately stepped in and willingly took care of the children. After the divorce, the father left the ranks of the unemployed, obtained a good job, remarried, and offered the possibility of a stable home life. Repeatedly the father and his new family had come to Theresa's assistance, but he did not wish to continue looking after Stephanie on an irregular basis. In sum, we hold that a strict changed-circumstances test was not applicable and that the trial judge acted within his discretion in applying the best interests test. *See Hirsch,* 725 P.2d at 1321.

## IV. CROSS–APPEAL

■ On the cross-appeal, Walter asserts that he should also have been awarded the custody of Rex. The evidence in this case is sparse, but it indicates that Theresa had a close relationship with Rex. The trial court no doubt concluded that, given the nature of that relationship and the reduced stress on Theresa by changing Stephanie's custody, the custody of Rex should not be disturbed. That determination was within the trial judge's discretion. *Id.* at 1321.

Affirmed.

HALL, C.J., and HOWE, Associate C.J., concur.

DURHAM, Justice (concurring and dissenting):

I concur with the result of the majority opinion. I dissent, however, from the holding that trial courts should not determine changed circumstances before applying the best interest test in all custody cases. I think that the threshold determination is valuable and necessary for all the reasons delineated in *Hogge v. Hogge,* 649 P.2d 51 (Utah 1982), and ought not to be abandoned. The rigidity which the majority fears has never been a necessary part of the test's application, in my view, for the following reasons:

1. A change in the custodial relationship *is* a "change of circumstances" for purposes of reexamining custody. Thus, a deterioration of the child's care or the capacity of the caretaker, for whatever reason (including the addition of other children or persons in the caretaker's household), would be a proper subject of proof. It is true that in some cases, the evidence showing a change in the custodial circumstances is going to look like, in fact may be the same as, so-called "best interest" evidence. But the evidence will be offered to prove that custody should be reexamined. The fact that it will also be relevant if the court reaches the issue of who receives custody does not render the evidence irrelevant to the change-of-circumstance question.

2. The current rule is entirely capable of accommodating the case where custody was initially determined by stipulation or default. All that is required is that the parties offer evidence as to the circumstances giving rise to the original custodial placement and to a change therein which renders the continued placement detrimental to the child.

The threshold standard requiring a change in circumstances is designed to create a rebuttable presumption in favor of stability, and our case law has consistently urged trial courts to apply it with flexibility and common sense. I would have no difficulty affirming the trial court's findings regarding the necessary change of circumstances in this case. The mother's living circumstances and support sources changed rather dramatically over the period during which she had legal custody. The addition of another child and the resulting stress, shown in this case to have had a direct and substantial impact on the quality of Stephanie's care, were sufficient under our cases to permit an examination of Stephanie's best interest regarding future placement. *Hogge,* 649 P.2d 51 (Utah 1982); *Kramer v. Kramer,* 738 P.2d 624 (Utah 1987).[1]

---

1. I specifically take issue with the attempt in the majority opinion to transform dictum in concurring opinions in *Kramer v. Kramer,* 738 P.2d 624 (Utah 1987) about the nature of the change-of-circumstances rule, into the holding of that case. Footnote 5 of the majority opinion in *Kramer* made it clear that the entire Court agreed on the existence of "exceptional situa-

In conclusion, I think that the abandonment of the changed circumstances standard as a threshold concern in custody disputes is unnecessary in this case and a step backward in the law.

ZIMMERMAN, J., concurs in the concurring and dissenting opinion of DURHAM, J.

tions where a change in the circumstances of the noncustodial parent may be relevant to a determination of whether the custody issue should be reopened." Further, the entire Court agreed that "an inquiry into the effects on the child of the established custodial relationship as it has developed over time is an entirely proper focus for a change-of-circumstances inquiry under *Becker* and *Hogge.*"