Vladimir PARYZEK, Plaintiff
and Appellant,

v.

Anna PARYZEK, Defendant
and Respondent.

No. 880359–CA.

Court of Appeals of Utah.

June 6, 1989.

Ann L. Wasserman, Salt Lake City, for plaintiff and appellant.

Carolyn Driscoll, Salt Lake City, for defendant and respondent.

Before GARFF, GREENWOOD and ORME, JJ.

## OPINION

GREENWOOD, Judge:

Plaintiff, Vladimir Paryzek ("Vladimir"), appeals from the trial court's order awarding custody of Martin Paryzek ("Martin"), to defendant, Anna Paryzek ("Anna"), awarding child support, and dividing the parties' assets and debts.

## BACKGROUND

Vladimir and Anna were married in 1977 in Czechoslovakia. Their only child, Martin, was born in 1979. Anna was educated in child care and teaching and employed in Czechoslovakia as a teacher for children with medical problems. In December 1981, the Paryzeks immigrated to the United States. After a short stay in New York, they moved to Utah, where Vladimir was employed as an electrical engineer. In April 1985, the parties separated. Vladimir initiated this divorce action and sought temporary custody of Martin. An order dated June 25, 1985, signed by Judge Dean E. Conder, awarded Vladimir temporary custody of Martin, provided for visitation by Anna, and ordered both parties to cooperate in a custody evaluation.

Thereafter, a custody evaluation was conducted by A. Paige Palmer, M.S.W., who interviewed Vladimir, Anna and Martin during June, July and August of 1985. Palmer's report states that neither parent is unfit, but that there are significant differences in parenting styles. Palmer found that Martin was clearly confused about his parents' divorce and his future, but said he wanted to live with his father. Palmer stated that Vladimir was teaching Martin to be responsible and independent, and encouraged him to learn English. Anna, on the other hand, was inconsistent, somewhat careless in making decisions, including those involving Martin, and was easily discouraged. Palmer concluded that Vladimir possessed characteristics which would make him an effective single parent, that Anna did not possess those characteristics, and recommended that custody be granted to Vladimir, with liberal visitation for Anna.

Trial was held in July 1987 before Judge Richard Moffat, Judge Conder having retired during the interim. Vladimir called Dr. Johanna McManemin, a psychologist, to testify. Dr. McManemin testified she had interviewed Martin twice, and had also interviewed both parents. She stated she first interviewed Martin in April 1986, and found he was having a difficult time adjusting to the divorce. At that time she believed Martin needed to be with the most stable and consistent parent, but had no opinion as to which parent would best provide those characteristics. After her subsequent interview with Martin in March 1987, she concluded that Vladimir would be the preferable custodial parent, because Martin had made incredible progress during the time he had lived with Vladimir. She found that Martin was very attached to his father, that a strong bond existed between them, and that Vladimir was sincerely concerned about Martin's best interests. Dr. McManemin also testified she had reviewed Palmer's report and agreed with its recommendations and findings. She further stated that her recommendation was influenced by the fact that Martin had lived with his father for approximately two and one-half years, had adjusted to his environment, and she believed it would be detrimental for him to make a change. Further emphasizing the importance of continued stability, she stated on cross-examination that her final recommendation might have been different if Martin had lived with Anna during that time period. She further noted that Martin's progress could be due, in part, to Anna's positive influence. Both of Dr. McManemin's reports were received into evidence. The second one, dated March 24, 1987, concluded, "It is felt that Martin is happy living with his father and

this examiner found no reason to consider a change in custody."

Anna called Dr. Gene Hansen, a clinical psychologist, to testify on her behalf. Dr. Hansen testified that this was a difficult case, as both Vladimir and Anna were good parents. He had some concern that if Vladimir had custody, Martin would not have enough time with his mother, and that Vladimir's parenting was somewhat rigid. Dr. Hansen testified that Martin would do well with either parent and that both parents were adequate and capable, although he thought the best interests of the child tipped slightly towards the mother. Dr. Hansen conceded that a change of custody to Anna would result in some difficulties, although he believed Martin could make the adjustment. Also, Dr. Hansen testified that in November 1985, Martin had said he wanted to live with his mother, but in July 1987, Martin said he wanted to live with his father. Dr. Hansen's written report cryptically concluded, "I can see no reason why Anna Paryzek should not be given custody of Martin Paryzek, with extremely liberal visitation privileges accorded Vladimir Paryzek."

Anna and some of her acquaintances testified that Vladimir had physically and emotionally abused her and corporally punished Martin. This testimony was disputed by Vladimir and his witnesses. Also, both Palmer's and Dr. McManemin's reports stated that Anna had told them of alleged physical abuse, but that there was no corroboration and they did not believe those allegations.

Both parties also testified as to their respective desires and capabilities to have custody of Martin. Before concluding the trial, the trial court indicated it would review the various custody reports and stated, "by reason of the expert testimony herein, I'm not going to give very much if any weight to the fact of the current custody of that child."

A minute entry dated September 1, 1987, declared, without explanation, that custody was awarded to Anna, and invited Anna's counsel to prepare findings of fact, conclusions of law, and a decree, supporting that conclusion. Anna's counsel prepared those documents, which were signed by the trial court. An appeal was filed and this court reversed and remanded for more specific and complete findings of fact concerning the best interests of the child. The unpublished memorandum opinion included the following language:

The child's interest in stability of the present environment is one of numerous factors to be considered in a custody determination. . . . In the present case, the child resided with his father under the temporary custody order for in excess of two years. *The findings should reflect the basis for the trial court's conclusion that other factors before it outweighed the child's interests in stability of the home environment.*

(Emphasis added).

In amended findings, the trial court found that Anna was Martin's primary caretaker prior to the parties' separation and continued to provide him with a stable, loving relationship while the divorce proceedings were pending. Because of Anna's background in child care and education in Czechoslovakia, the court found that Anna was admirably equipped to be the custodial parent. The court also found that Vladimir had no formal training in parenting, and appeared to be heavy-handed, dictatorial and uncompromising. The court also stated that in its opinion, Anna's approach to parenting was better than Vladimir's and that Vladimir had been abusive to Anna and Martin. With regard to visitation, the court found that Vladimir had not encouraged and, in fact, had attempted to prevent visitation between Anna and Martin. In addition, the court found that Dr. McManemin's report was not impressive, because there was not adequate opportunity to observe Martin and Anna interacting. The court found Dr. Hansen's testimony more credible because he had a better opportunity to evaluate Anna, Martin and the home environment. The court further found that Vladimir had, in effect, forced the separation of mother and son, and had sought to maintain that separation. Also, Anna's distraught state of mind at the time of their

separation was short-lived and was no longer controlling as to Anna's qualifications to have custody. Finally, the court found that Martin would be better off with Anna than with Vladimir, and that Anna would encourage the growth and nurturing of Vladimir and Martin's relationship. However, rather than directly address the stability factor in its findings as this court had directed, the trial court explained its adamancy in refusing to consider that paramount consideration as follows:

> It should be kept in mind that the award of custody granted herein is the first permanent award of custody entered in this matter. All prior custodial questions have been pending the final divorce of the parties. It is, therefore, based upon the above facts and views of the Court, the Court's determination at this time that the child's best interest will be served by the award of custody to the mother and that the child should have no reason not to be happy and well adjusted in her custody subject to the visitation of the father.

The court also found that the parties had $780 in a joint checking account at the time of their separation, awarded each half of that amount, and distributed their other assets and liabilities. The amended decree of divorce requires Vladimir to pay $250 per month child support until Martin is eighteen or graduates from high school, whichever occurs later.

Vladimir appeals, claiming the trial court erred in: 1) its custody award to Anna; 2) its child support award; and 3) its division of the parties' property.

## CHILD CUSTODY

We consider first, the court's award of custody to Anna, and Vladimir's contentions that the trial court erroneously failed to consider the child's preference, ignored the factor of stability in considering Martin's best interests, and incorrectly applied the law in awarding Anna custody.

■ We first address whether the court erred by failing to interview Martin and inquire as to his custodial parent preference. The court was first asked to interview Martin in Vladimir's "Motion to Have Court Open The Judgment, Take Additional Testimony And Direct Entry of A New Judgment." The court denied the motion. Consideration of a motion to grant a new trial or open a judgment for additional evidence under Utah R.Civ.P. 59 "is a matter left to the discretion of the trial judge, and that decision will be reversed only if the judge has abused that discretion by acting unreasonably." *Christenson v. Jewkes*, 761 P.2d 1375, 1377 (Utah 1988). While a child's preference is a factor to be considered by the court, it is only one of several. *Hutchison v. Hutchison*, 649 P.2d 38, 41 (Utah 1982). Moreover, Utah Code Ann. § 30-3-10 (1988), provides that "[t]he court may inquire of the children and take into consideration the children's desires regarding the future custody, but the expressed desires are not controlling and the court may determine the children's custody otherwise." The statute does not require interviews, but allows them according to the court's exercise of its discretion. In this case, we find no abuse of discretion in the trial court's denial of the motion to interview Martin, where that motion was made after the trial concluded. Moreover, we note there was testimony by Dr. Hansen that shortly before trial commenced, Martin had expressed a preference to live with his father.

■ We next consider if the court erred in not considering stability as a factor influencing Martin's custody. The overriding consideration in child custody determinations is the child's best interests. *Hutchison v. Hutchison*, 649 P.2d 38, 40 (Utah 1982). There are several factors to be considered by the trial court in awarding custody, some of which concern the child's specific needs and others which relate to the parents' characteristics. *Id.* at 41. However, providing a stable home for a child and avoiding "ping pong" custody awards are critical factors in custody disputes. *Hogge v. Hogge*, 649 P.2d 51, 53–54 (Utah 1982). There is a "general interest in continuing previously determined custody arrangements where the child is happy and well adjusted." *Hutchison*, 649 P.2d

at 41. This interest in stability has been the basis for requiring a substantial change of circumstances as a precondition for reexamining permanent custody awards. *Id.; Kramer v. Kramer,* 738 P.2d 624, 626 (Utah 1987); *Fullmer v. Fullmer,* 761 P.2d 942, 946 (Utah Ct.App.1988). Recently, however, in *Elmer v. Elmer,* 776 P.2d 599, (1989), the Utah Supreme Court held that strict change of circumstances requirements would not always apply in custody modification proceedings. Nonetheless, the court emphasized the importance of relative permanence in custody orders:

> [I]f an existing custody arrangement is not inimical to the child, the continuity and stability of the arrangement are factors to be weighed in determining a child's best interests. What particular weight to be accorded those factors in a given case must depend on the duration of the initial custody arrangement, the age of the child, the nature of the relationship that has developed between the child and the custodial and noncustodial parents, and how well the child is thriving physically, mentally, and emotionally. A very short custody arrangement of a few months, even if nurturing to some extent, is not entitled to as much weight as a similar arrangement of substantial duration.

*Id.* at 604. *See also Maughan v. Maughan,* 770 P.2d 156 (Utah Ct.App.1989). Notably, *Elmer* did not identify the temporary versus permanent nature of the "initial custody award" as one of the factors to be considered in deciding how much weight to give "continuity and stability." The *Elmer* decision emphasized that the paramount consideration must be promoting the child's best interests, and it is irrelevant from the child's perspective, how, as a legal matter, the existing arrangement came about.

Other Utah Supreme Court cases have similarly held that stability is a fundamental consideration in original custody awards as well as in subsequent modifications. In *Pusey v. Pusey,* 728 P.2d 117, 120 (Utah 1986), the court stated that decisive factors in child custody determinations should be function-related, and include the "identity of [the] primary caretaker during the marriage." However, *Pusey* also states that another factor to consider is the "identity of the parent with whom the child has spent most of his or her time pending custody determination if that period is lengthy." *Id.* In *Davis v. Davis,* 749 P.2d 647 (Utah 1988), the father had custody of the child for over a year prior to trial on the issue of a permanent custody award. The trial court considered various factors, including that the father had provided a stable environment and had been the primary caretaker during the interim period. The Utah Supreme Court affirmed the custody award to the father, and stated that "[i]n considering competing claims to custody between fit parents under the 'best interests of the child' standard, *considerable weight* should be given to which parent has been the child's primary caretaker" prior to the divorce. *Davis,* 749 P.2d at 648 (emphasis added).

In this case, the trial court stated it was not going to give "very much if any weight to the fact of the current custody of that child" and the amended findings emphasize that this is the first award of permanent custody. As a whole, we conclude from the record that the trial court explicitly disregarded the facts that Martin had resided with Vladimir for approximately two and one-half years prior to the custody trial, had progressed well in that environment, and discounted the potential harm to Martin which would result if a change in custody occurred. The cases cited indicate, and we hold, that in custody determinations, trial courts must examine a child's need for stability, and therefore, consider prior custody arrangements, including the duration of those arrangements, and the potential harm to the child if the arrangement is changed. Therefore, insofar as the trial court in this case failed to factor in Martin's need for stability and his two and one-half years in Vladimir's custody prior to trial in its determination of Martin's best interests, the court erred. It remains to be seen whether that error was harmless, permitting affirmance of the custody award; requires yet another remand for further

findings; or requires reversal as a matter of law.

Custody determinations are matters within the broad discretion of the trial court and we will not disturb their determinations so long as they are consistent with the standards set by appellate courts, and are supported by adequate findings of fact and conclusions of law. *Martinez v. Martinez,* 728 P.2d 994, 995 (Utah 1986). Further, in reviewing the trial court's actions, "[w]e will not substitute our judgment for that of the trial court" *if* substantial evidence supports the factual findings and there was a proper application of the legal standards. *Bake v. Bake,* 772 P.2d 461 (Ct.App.1989). In the process of a custody decision, "trial courts should consider various relevant factors in determining which custodial arrangement is in the child's best interest." *Myers v. Myers,* 768 P.2d 979, 983 (Utah Ct.App.1989). Child-related factors were described in *Hutchison* to include the following: the child's preference; keeping siblings together; strength of bonding between the child and each parent; and previously determined custody. *Hutchison,* 649 P.2d at 41. "Other factors related primarily to the prospective custodians' character or status or their capacity or willingness to function as parents," and include, in part, moral character, emotional stability, depth of desire for custody, ability to care personally for the child, functional impairments, and financial condition. *Id.; see also Pusey,* 728 P.2d at 120.

> Although no one set of factors governs a custody determination in every case, the trial court's findings should articulate those factors pertinent to the child's best interests which the court considered in making its determination, such as the needs of the child and the ability of each parent to meet those needs.

*Painter v. Painter,* 752 P.2d 907, 909 (Utah Ct.App.1988).

▆▆▆ We find the findings in this case defective in several respects. The findings omit any reference to the Palmer report which followed and validated the temporary custody order. The findings also failed to consider the undisputed evidence of strong bonding between father and son, the most recent statement of Martin's preference to live with his father, Vladimir's status as primary caretaker during the two and one-half years prior to trial, and evidence that Martin thrived while living with Vladimir. We believe that these omissions constitute an abuse of discretion. In addition, the court discounted Dr. McManemin's testimony that Martin should remain with Vladimir, while that recommendation specifically took into account the living arrangement which existed at the time and predicted a negative impact on Martin if custody were changed. Both Dr. McManemin and Palmer strongly recommended that Vladimir be given custody, while Dr. Hansen conceded that it was a very close call, even referring to his recommendation as a "toss of a coin," with only a slight preference for Anna. The expert testimony preponderated in favor of granting Vladimir custody. The parties' testimony differed markedly on issues such as abuse by Vladimir and interference with visitation. None of the experts gave much, if any, credence to those accusations, although the court seemed to rely on them in the amended findings. Also significant is the testimony that Martin had done very well during that time period, had progressed at school, and had successfully dealt with the fact of his parents' divorce. While we are mindful of the principles of deference to the trial court in evidentiary findings, we are convinced in this case, that the court's disregard of Martin's need for consistency and stability, especially given the rather even parenting abilities, was an improper application of law constituting an abuse of discretion. Because of the length of time of the temporary custody, that factor becomes one of relatively greater importance in determining permanent custody. We further believe that no purpose would be served by again remanding with directions to enter findings considering the factors we have identified as relevant. This was a close case, where the trial court itself observed that "I think everybody has agreed to the fact that the little boy has two pretty good parents." Where the call is a close one, we believe the child's interests will

best be promoted by maintaining the prior, stable and healthy arrangement. That is, where the evidence was otherwise inconclusive—if anything, favoring Vladimir somewhat—the paramount consideration of stability conclusively tips the scale in Vladimir's favor and warrants awarding custody to him, as a matter of law. We, therefore, reverse and award custody to Vladimir, with Anna to have liberal visitation rights. We remand for a determination of child support to be paid by Anna and an appropriate visitation schedule.

The issue of child support raised by Vladimir is moot in light of our order regarding custody.

## PROPERTY AWARD

■ Lastly, Vladimir assails the court's division of property and debts. In part, he contends the court improperly found that the parties had about $780 in their checking account and divided that amount between Anna and Vladimir. Anna testified that on the day she left Vladimir, she went to the bank and checked the balance in the account and the balance was about $780. A bank statement was admitted into evidence which indicates end of day balances on April 8 of $781.78, April 9 of $677.09, and $32.00 on April 10. Anna's testimony is somewhat unclear as to exactly which day she left, but nevertheless, we find it within the court's discretion to determine that each party was entitled to half of the amount in the account on the approximate date of their separation. We also find no error in the remainder of the court's order regarding the parties' assets and debts.

Affirmed in part and reversed and remanded in part. The parties shall bear their own costs of this appeal.

GARFF and ORME, JJ., concur.