OPINION
GREENWOOD, Judge:
Appellant Scott G. Smith appeals the trial court’s dismissal of his petition to modify a decree of divorce. We reverse and remand.
Scott and Patricia G. Smith were divorced April 13, 1981, pursuant to a decree of divorce. Scott was not present at the hearing, but filed a consent and waiver for entry of judgment. The decree granted custody of the parties’ minor child, Jesse, to Patricia and granted Scott reasonable visitation rights. On August 21, 1981, pursuant to a motion by Scott for an order to show cause, the court entered an order which specifically defined Scott’s visitation rights.
Following the court’s order, Patricia and Jesse moved first to Mexico and then to Arizona. Problems with visitation continued, and Scott filed a series of motions, seeking enforcement of his visitation rights.
On December 14, 1984, pursuant to a hearing with both parents appearing, the court issued an order modifying the divorce decree. The order set forth in greater detail Scott’s visitation rights, specifying the locations and times when Jesse could be picked up, and held Patricia in contempt for her deliberate denial of Scott’s visitation rights. The court determined, however, that Patricia could purge herself of the contempt by affirmatively working to resolve any future visitation problems.
On June 2, 1988, Patricia filed an action in Texas to modify visitation, and also sought a temporary restraining order to prevent Scott from removing the child from El Paso County, Texas, and from brainwashing or otherwise psychologically manipulating Jesse. The Texas court issued a *409 temporary restraining order pending a hearing scheduled for June 21, 1988.
Prior to the Texas hearing, a conference call was held between the Texas court master and the Utah judge. They agreed that Scott and Patricia were both permanently restrained from engaging in any psychological manipulation or brainwashing of Jesse and that the visitation schedule was to continue as set forth in the Utah order.
On June 21, 1988, Scott petitioned the Utah court to modify the custody decree. Scott argued that Patricia’s interference with his visitation rights constituted a material change of circumstances justifying a change of custody. This was the first time Scott alleged a material change of circumstances or sought a change of custody.
Patricia filed a motion to stay the proceedings, asserting that custody should be determined in Texas. The court denied the motion and found that jurisdiction .over custody continued in Utah. Patricia then filed a motion in limine to restrict introduction of evidence arising prior to the trial court’s December 14, 1984, modification order. The court granted the motion on the grounds that such evidence had previously been litigated and was therefore excludable under the doctrine of res judicata.
Trial was held on December 15, 1988. The court dismissed Scott’s petition to modify the divorce decree, finding that he had failed to show a material change in circumstances. However, the court continued to hold Patricia in contempt.
On appeal, Scott claims the trial court erred by (1) granting appellee’s motion in limine excluding evidence arising prior to the 1984 contempt order and relating primarily to visitation interference; and (2) failing to consider all evidence regarding interference with visitation rights as relevant to a substantial material change of circumstances or a change of custody.
STANDARD OF REVIEW
The trial court's factual findings are presumed correct and unless they are shown to be “clearly erroneous” under Utah R.Civ.P. 52(a), they will not be set aside on appeal. In Re Estate of Bartell, 776 P.2d 885, 886 (Utah 1989); Kishpaugh v. Kishpaugh, 745 P.2d 1248, 1253 (Utah 1987). However, a trial court’s conclusions of law are examined for correctness and are accorded no special deference on review. Bountiful v. Riley, 784 P.2d 1174, 1175 (Utah 1989); Western Kane County Special Serv. Dist. No. 1 v. Jackson Cattle Co., 744 P.2d 1376, 1378 (Utah 1987). Because the issues addressed in this opinion concern questions of law, we apply the latter standard of review.
RES JUDICATA
We first address Scott’s claim that the trial court erred in granting appellee’s motion in limine to exclude evidence previously considered by the court in the 1984 contempt proceedings, or arising prior to that time, on the basis that it was barred by the doctrine of res judicata.
The doctrine of res judicata is comprised of two branches: claim preclusion and collateral estoppel or issue preclusion. Both branches are designed to protect litigants from the burden of relitigating an identical issue with the same party or his privy and to promote judicial economy by preventing needless litigation. Penrod v. Nu Creation Creme, Inc., 669 P.2d 873, 875 (Utah 1983); Copper State Thrift & Loan v. Bruno, 735 P.2d 387, 389 (Utah Ct.App.1987); see generally Blonder-Tongue Laboratories, Inc. v. University of Illinois Found., 402 U.S. 313, 328-29, 91 S.Ct. 1434, 1442-43, 28 L.Ed.2d 788 (1971).
The branch applicable to this case is claim preclusion, which bars the relitigation of a claim that previously has been fully litigated between the same parties. To invoke claim preclusion, both actions must involve the same parties or their privies and the same claim or cause of action. Also, litigation of the first claim must have resulted in a final judgment. Penrod, 669 P.2d at 875. Claim preclusion prevents re-litigation not only of claims actually litigated in the first proceeding, but also of claims which could and should have been litigated in the prior action, but were not raised. Id.
*410 The doctrine of res judicata applies in divorce actions and subsequent modification proceedings. Hogge v. Hogge, 649 P.2d 51, 53 (Utah 1982). Application of res judicata in divorce actions is distinguished, however, because of the equitable doctrine that allows courts to reopen determinations if the moving party can demonstrate a substantial change of circumstances. Thompson v. Thompson, 709 P.2d 360 (Utah 1985) (per curiam); Hogge, 649 P.2d at 53; Throckmorton v. Throckmorton, 767 P.2d 121, 123 (Utah Ct.App.1988). In addition, the courts have continuing jurisdiction bestowed by statute to enter subsequent orders regarding the parties, their children, or their property, “as is reasonable and necessary.” Utah Code Ann. § 30-3-5(3) (1989). Nevertheless, a custody decree, which is predicated on a particular set of facts, is res judicata and will not be modified in the absence of a showing of a substantial or material change in circumstances which warrants doing so. Hogge, 649 P.2d at 53; Trego v. Trego, 565 P.2d 74, 75 (Utah 1977); Smith v. Smith, 564 P.2d 307, 309 (Utah 1977).
In Hogge, the supreme court established a bifurcated procedure to obtain a change of custody: first, the parent seeking modification must establish a substantial change of circumstances occurring subsequent to the divorce; and second, fhat a change in custody is in the best interests of the child. Hogge, 649 P.2d at 53. However, the supreme court later noted that custody decrees are not always adjudicated, and when they are not, the res judi-cata policy underlying the changed-circumstances rule should be subservient to the best interests of the child. Elmer v. Elmer, 776 P.2d 599, 603 (Utah 1989). Because an unadjudicated custody decree based on default or stipulation is not based on an objective, impartial determination of the best interests of the child, it may not serve the child’s best interests. Id. The supreme court concluded that in instances where the original custody determination was not litigated, the trial court could receive evidence on change in circumstances which could include evidence pertaining to the child’s best interests. Id. at 605. Similarly, this court, in Maughan v. Maughan, 770 P.2d 156, 160 (Utah Ct.App.1989), determined that the rigid Hogge bifurcation rule may be liberalized in circumstances where “the initial custody award is premised on a temporary condition, a choice between marginal custody arrangements, a default decree, or similar exceptional criteria,” to allow the trial court to examine events transpiring since the original custody order and the resulting effects on the child.
In sum, we find that res judicata bars domestic modification proceedings only where the moving party cannot establish either a substantial change of circumstances or mistake of fact. Further, as part of a change of custody analysis in the requested modification of a nonlitigated custody determination or choice between evils (as defined in Elmer and Maughan), the court may consider evidence bearing on the effect of custody on the child.
In the case before us, we must also determine whether because Scott could have sought a change of custody in 1984 but did not, he is precluded from presenting evidence then extant at the later proceedings. We conclude he is not. It would be too speculative to determine at what point Scott could have, or should have, asked for a change in custody. Furthermore, the paramount consideration must be the child’s best interests. We find, therefore, that the trial court erred in excluding evidence prior to 1984 on the grounds of res judicata.
VISITATION INTERFERENCE
We next address Scott’s claim that the trial court erred in failing to consider evidence regarding interference with visitation rights as relevant in a petition to change custody.
Modification of a custody decree must serve the welfare or best interests of the child. Elmer, 776 P.2d at 605. In determining the best interests of the child, the court should consider the policy against uprooting a child from an established well- *411 functioning relationship, except for compelling reasons. Id.; Paryzek v. Paryzek, 776 P.2d 78, 81 (Utah Ct.App.1989). Consequently, a substantial change in circumstances must be found before a custody decree is modified.
The best interests of a minor child are promoted by having the child respect and love both parents. “Fostering a child’s relationship with the noncustodial parent has an important bearing on the child’s best interest.” Dana v. Dana, 789 P.2d 726, 730 (Utah Ct.App.1990). Visitation by a noncustodial parent helps to develop this bonding of respect and love. Interference by the custodial parent with a noncustodial parent’s visitation rights as ordered by the court may clearly be contrary to a child’s best interests. Entwistle v. Entwistle, 61 A.D.2d 380, 402 N.Y.S.2d 213, 215-16 (1978) (“It is readily apparent that the respondent’s very act of preventing the [minor children] ... from seeing and being with their father is an act so inconsistent with the best interests of the children as to, per se, raise a strong probability that the mother is unfit to act as custodial parent.”).
Some courts have held that, in appropriate cases, interference with visitation may justify a change in custody. Egle v. Egle, 715 F.2d 999, 1016 (5th Cir.1983); Moffat v. Moffat, 27 Cal.3d 645, 165 Cal. Rptr. 877, 612 P.2d 967, 971 (1980); Lopez v. Lopez, 97 N.M. 332, 639 P.2d 1186, 1188 (1982). Utah has not addressed the issue. We are persuaded, however, that interference with visitation may be a factor relevant to the issues of both a change in circumstances and the child’s best interests. The trial court did not consider such evidence because of its ruling on the motion in limine and may have further believed that such evidence was not relevant. If so, the court erred. We, therefore, reverse and remand for consideration of all evidence subsequent to the divorce decree, including that considered in connection with the 1984 contempt proceeding. Consistent with this opinion, the court should determine whether the evidence presented establishes a material, substantial change in circumstances.
Reversed and remanded.
BENCH and JACKSON, JJ., concur.