2011 UT App 272

**Amber S. TAYLOR fka Amber S. Elison, Petitioner and Appellant,**

v.

**Clinton J. ELISON, Respondent and Appellee.**

No. 20100199–CA.

Court of Appeals of Utah.

Aug. 18, 2011.

David S. Dolowitz, Salt Lake City, for Appellant.

Frederick A. Jackman, Orem, for Appellee.

Before Judges VOROS, ROTH, and CHRISTIANSEN.

## OPINION

ROTH, Judge:

¶ 1 Amber S. Taylor (Mother) appeals the district court's decision to enforce a relocation provision of a stipulated divorce decree that automatically transferred physical custody of the parties' two children to Clinton J. Elison (Father) without first considering whether a change in the existing physical custody would be in the children's best interests. We reverse and remand.

## BACKGROUND

¶ 2 In May 2000, Mother and Father were married, and the marriage resulted in two children. The couple separated in November 2004, then divorced. The divorce decree was entered by stipulation in July 2005.[1] The

---

1. To be precise, the district court adjudicated some provisions of the divorce decree—specifically, provisions concerning the amount of child support to be paid. However, the custody arrangement and, in particular, the relocation provision were agreed upon by the parties and en-

divorce decree granted primary physical custody of the children to Mother, with both parents sharing legal custody. The decree included a relocation provision, however, that required automatic transfer of physical custody of the children to Father in the event Mother moved anywhere outside of Utah, other than to Las Vegas, Nevada. Specifically, the relocation provision states that "if [Mother] moves from the state of Utah, other than [to] the Las Vegas area, the children shall remain in Utah with [Father] who will then be designated as the primary physical custodian."

¶ 3 At the time of the divorce, Mother, Father, and the children resided in Iron County. In 2006, however, Father relocated to Salt Lake County and Mother relocated to Washington County with the children. Because Mother had not moved from Utah, the relocation provision was not triggered, and Mother retained physical custody.

¶ 4 In February 2009, Mother planned to move from Washington County to Flagstaff, Arizona, with the children, who were then five and seven years old. At that time, over four years had passed since the parties had separated, and Mother had been the children's primary caregiver during that time. Because this move would trigger the divorce decree's relocation provision, Mother petitioned to modify the decree so she could retain custody of the children. In May 2009, while her petition for modification remained pending, Mother and the children moved to Flagstaff. Father then petitioned for temporary modification of custody, requesting that the court transfer physical custody of the children to him pursuant to the relocation provision, pending resolution of Mother's petition to modify. Mother responded with her own petition for temporary modification of custody, asking the court to allow the children to remain with her while her petition to modify remained pending.

¶ 5 In July 2009, after a hearing on Mother's and Father's competing petitions for temporary modification of custody, the district court denied Mother's petition for temporary modification and transferred custody of the children from Mother to Father. In so doing, the district court acknowledged that although Father had petitioned for temporary modification of custody, the purpose of his petition was not to modify but to enforce the relocation provision by having custody of the children transferred to him due to Mother's move from Utah. The district court reasoned that "[t]he change of custody from [Mother] to [Father] is not a modification of the [d]ecree" but was instead "enforcement of the decree." The court thus stated that it was "granting [Father]'s motion for temporary orders, but not as such," for although it was ruling in Father's favor, it was "enforc[ing] . . . the decree . . . [and] not [granting] a temporary order." Accordingly, the district court's ultimate decision was to enforce the divorce decree.[2]

■ ¶ 6 The district court began its analysis by briefly conducting the bifurcated inquiry required by Utah law in custody modifications cases where the court must consider whether "there has been a substantial and material change in the circumstances upon which" custody was awarded and "whether a modification is in the best interests of the child." *See Hudema v. Carpenter*, 1999 UT App 290, ¶ 22, 989 P.2d 491. The district court determined, however, that no change in circumstances had occurred because "th[e] move was contemplated at the time of the [divorce] decree" and "the decree specifically provided that a change in custody would occur if . . . [Mother] move[d] from . . . Utah," thus "the reasons for the move . . . are irrelevant." Having concluded that there had been no change in circumstances, the district court only briefly mentioned the chil-

tered by stipulation. As these are the provisions at issue here, we will simply refer to the divorce decree as having been entered by stipulation.

2. This appeal is from the district court's final order enforcing the parties' divorce decree. In the course of its decision, however, the court also considered and denied Mother's petition for temporary modification of custody. The facts and

issues underlying both the district court's decision to enforce the divorce decree and its denial of Mother's petition for temporary orders are so intertwined, however, that we necessarily address the reasoning of both even though, considered alone, the court's ruling on temporary orders would be interlocutory.

dren's best interests, stating that it had "already ordered [in the decree] that custody would change ... [based u]pon stipulation of the part[ies]" and, thus, had "already determined that it would be in the best interests of the children" for custody to transfer to Father if Mother moved from Utah to anywhere other than Las Vegas, Nevada, "primarily because the parties stipulated to it."

¶ 7 In considering Mother's petition for temporary modification of custody, the district court next looked to rule 106 of the Utah Rules of Civil Procedure, which provides that "[d]uring the pendency of a petition to modify, the court may order a temporary modification of custody ... to address an immediate and irreparable harm ..., provided that the modification serves the best interests of the child." Utah R. Civ. P. 106(b)(1)(B). The district court stated that it did not "see any immediate or irreparable harm here regardless of which parent has these children in his or her primary custody." The court reasoned that "[t]he children will not be living in the Washington County ... area either way" and neither Flagstaff nor Salt Lake County "is an unsatisfactory place for children to live." The district court further reasoned that "[t]here will be long travel for the children [to] visit[ ] with the noncustodial parent, regardless of who has the primary custody of the children [and t]he distance doesn't change just because one party has custody." The district court noted that "the children ... are not settled in the Flagstaff area ... [because they] haven't really been there long enough to be particularly settled there" so "[t]hey may be ... more familiar with [Father's Salt Lake County] residence than the Flagstaff residence." The court concluded that it did not "find any basis for [it] to grant temporary orders which are at variance with the existing decree." Viewing the decree's relocation provision as controlling, the district court denied Mother's request that the children remain in her custody while her petition to modify was pending and instead enforced the divorce

decree, transferring physical custody of the children to Father.[3]  Mother appeals.

## ISSUE AND STANDARD OF REVIEW

¶ 8 Mother challenges the district court's decision to enforce the relocation provision in the divorce decree, transferring physical custody of the children from Mother to Father without first considering whether a change in custody would be in the children's best interests. A district court's award of custody is reviewed for abuse of discretion. *See Hudema*, 1999 UT App 290, ¶ 21, 989 P.2d 491.

## ANALYSIS

¶ 9 In considering Mother's and Father's competing petitions for temporary modification of custody, the district court ultimately decided to enforce the divorce decree. In its analysis, however, the court applied not only the standard bifurcated custody modification analysis applicable to a petition for permanent modification of custody, *see Hudema v. Carpenter*, 1999 UT App 290, ¶ 22, 989 P.2d 491 ("Before modifying a custody order, the court conducts a bifurcated inquiry to determine ... [whether] there has been a substantial and material change in the circumstances upon which ... [custody was awarded and] whether a modification is in the best interests of the child."), but also applied rule 106, which governs "temporary modification of custody" "[d]uring the pendency of a petition to modify" a divorce decree, *see* Utah R. Civ. P. 106(b)(1)(B). Neither party has addressed the district court's application of rule 106. Rather, both parties have limited their arguments to application of the bifurcated custody modification analysis. But because the district court relied upon rule 106 as a basis for its decision to enforce the divorce decree, we also address application of the rule.

■ ¶ 10 The district court's decision to enforce the divorce decree and immediately transfer custody to Father turned in significant part on its conclusion that because the

---

3. Immediately after the district court issued its ruling, Mother asked if the court would reverse its decision if she moved back to Utah. The district court stated that it "d[id no]t have any basis for doing that" because there is no "provision [in the decree] for a party who moves away and then moves back."

**452**

decree's relocation provision had already contemplated Mother's move outside of Utah and had provided a ready-made response—transfer of physical custody from Mother to Father—Mother's move to Flagstaff involved no material change of circumstances. In attaching such pivotal weight to the change in circumstances question, however, the court ultimately gave short shrift to the inquiry central to both the permanent and temporary petitions for modification, i.e., whether an immediate change in the children's long-standing primary caregiver would be in their best interest. Our analysis therefore begins by discussing the limited role that the material change in circumstances analysis plays as a threshold issue in petitions for permanent modification of an unadjudicated divorce decree where the modification sought is a change in the child's physical custody. We then conclude that the best interests of the child must be a primary focus when analyzing a request for a permanent change of custody in an unlitigated decree. In light of that conclusion, we then address the proper application of rule 106 to a request for temporary modification of custody in circumstances such as this where the requested change would preserve the custodial *status quo* by temporarily continuing a long-term custody arrangement while automatic enforcement of the decree's contingent relocation provision would effect an immediate change in the children's primary caregiver.

¶ 11 Turning first to the bifurcated custody modification analysis, Mother argues that the district court abused its discretion by enforcing the divorce decree and failing to adequately consider the best interests of the children when it transferred custody of the children to Father based solely on the relocation provision in the divorce decree. Father responds that the district court properly determined that a change in circumstances had not occurred because the possibility of Mother relocating outside of Utah had been contemplated by the divorce decree. Father thus asserts that because there was no change in circumstances the district court was not required to consider the children's best interests. Mother counters that because she and Father had stipulated to the divorce decree, the relocation provision was unadjudicated and therefore was not presumptively aligned with the children's best interests. Thus, according to Mother, the district court should have considered whether transferring custody from one parent, who had been the children's primary caregiver, to the other parent, based solely on a stipulated relocation provision was in the best interests of the children.

¶ 12 As a general matter, "[b]efore modifying a custody order, the court conducts a bifurcated inquiry to determine ... [whether] there has been a substantial and material change in the circumstances upon which ... [custody was awarded and] whether a modification is in the best interests of the child." *Hudema*, 1999 UT App 290, ¶ 22, 989 P.2d 491. Generally, the trial court need "not consider evidence of the child's best interests until it finds changed circumstances." *Id.* (citing *Wright v. Wright*, 941 P.2d 646, 650–51 (Utah Ct.App.1997) ("[O]nly if a substantial change of circumstances is found should the trial court consider whether a change of custody is appropriate given the child's best interests." (internal quotation marks omitted))).

¶ 13 The requirement that the district court find a change in circumstances before modifying a custody order serves two policies. "First, the emotional, intellectual, and moral development of a child depends upon a reasonable degree of stability...." *Elmer v. Elmer*, 776 P.2d 599, 602 (Utah 1989). Thus, requiring a change in circumstances before changing a custody arrangement protects children from the deleterious effects of "ping-pong" custody awards. *See Wright*, 941 P.2d at 651. The second policy is based in the principles of res judicata, for "courts typically favor the one-time adjudication of a matter to prevent the undue burdening of the courts and the harassing of parties by repetitive actions." *Elmer*, 776 P.2d at 602; *see also Smith v. Smith*, 793 P.2d 407, 409–10 (Utah Ct.App.1990) (explaining the applicability of res judicata principles "in divorce actions and subsequent modification proceedings").

¶ 14 "However, the res judicata aspect of the rule must always be subservient to the best interests of the child." *Elmer*,

776 P.2d at 603. "The courts have long held that even when an initial decree has adjudicated the best interests of a child, a subsequent proceeding could reopen that decree if material facts were not before the court or if the circumstances ... had subsequently changed...." *Id.* But "custody decrees are not always adjudicated, and when they are not, the res judicata policy underlying the changed-circumstances rule is at a particularly low ebb" and must not be so inflexible as to categorically foreclose examination of the child's well-being. *See id.; see also Smith,* 793 P.2d at 410. This is because "an unadjudicated custody decree is not based on an objective, impartial determination of the best interests of the child" and "may in fact be at odds with the best interests of the child." *Elmer,* 776 P.2d at 603; *see also Smith,* 793 P.2d at 410. Because the ultimate objective in such cases is the impact on the child of a proposed change in custody, "[t]he best interests of the child should never be lost sight of, and rules on change in custody should not be so rigid that this overarching principle is not followed." *See Elmer,* 776 P.2d at 604 (internal quotation marks omitted). Accordingly, the Utah Supreme Court has held that "in change of custody cases involving a nonlitigated custody decree, [the district court] ... should receive ... evidence that pertains to the best interests of the child." *Id.* at 605.

¶ 15 In this case, the district court conducted a prototypically bifurcated custody modification analysis and first considered, as a threshold matter, whether a change in circumstances had occurred that warranted modification of the divorce decree. The district court focused almost exclusively on the fact that Mother and Father had already contemplated what would occur if Mother relocated outside of Utah to anywhere other than Las Vegas and had agreed that in the event of such a move custody of their children would transfer from Mother to Father.

The district court thus concluded that "th[e] move was contemplated at the time of the [divorce] decree ... [so] the reasons for the move ... are irrelevant ... [b]ut [the] move has consequences ... [because] the [divorce] decree specifically provided that a change in custody would occur if [Mother] ... moved ... from ... Utah." Having determined that no change in circumstances had occurred that warranted further inquiry into the children's best interests, the district court stated only that when it had initially entered the decree with its relocation provision, it had "already determined that [transferring custody] would be in the best interests of the children ... primarily because the parties stipulated to it."

¶ 16 Although the district court explicitly recognized that the divorce decree had been stipulated, it viewed the stipulated nature of the relocation provision as strengthening rather then undermining its conclusion that it need not consider the best interests of the children. As discussed above, however, Utah law requires a different analytical approach when a divorce decree has been stipulated rather than being the product of judicial scrutiny, and, accordingly, the district court should have considered the children's best interests by taking into account the existing circumstances rather than simply considering the provisions of the decree. *See id.* (holding that "in change of custody cases involving a nonlitigated custody decree, [the district court] ... should receive ... evidence that pertains to the best interests of the child"). Such an inquiry into the children's best interests was particularly crucial here where enforcement of the relocation provision resulted in an actual change of custody that was of potentially enormous significance to the children—a change that disrupted rather than preserved the children's stability in their existing, long-term placement.[4] *See generally*

---

4. The district court concluded that because the children would have to relocate to a new residence whether they lived with Mother or Father and because the children would also be required to travel a considerable distance to visit either parent, the children would be uprooted regardless of which parent had custody. *See supra* ¶ 7. While the potentially disruptive effects on the children of Mother's geographical move will be

an important part of any custody analysis stemming from Mother's relocation, the concomitant effects of removal from a longstanding primary caregiver is "a critically important factor" that the district court did not consider. *See Hudema v. Carpenter,* 1999 UT App 290, ¶ 26, 989 P.2d 491 (stating that a critically important factor in a best interests analysis is continuity of placement with the child's primary caregiver (citing *Davis v.*

*id.* at 602 (explaining that one of the main considerations underlying the custody modification analysis is the recognition that "the emotional, intellectual, and moral development of a child depends upon a reasonable degree of stability"); *id.* at 605 (stating that in considering evidence concerning the best interests of the child, "stability and continuity [should be given] the weight that is appropriate in light of the duration of the existing custodial relationship and the general welfare of the child"); *Hudema v. Carpenter,* 1999 UT App 290, ¶ 26, 989 P.2d 491 (explaining that "when [a] child is thriving, happy, and well-adjusted," a critically important factor to consider in a best interests analysis is continuity of placement with the child's primary caregiver (citing *Davis v. Davis,* 749 P.2d 647, 648 (Utah 1988))); *Wright v. Wright,* 941 P.2d 646, 651 (Utah Ct.App.1997) (providing that the custody modification analysis "allows courts to monitor the best interests of children and especially to provide stability to children by protecting them from 'ping-pong' custody awards"). We therefore agree with Mother that, in applying the bifurcated custody modification analysis that is typically applicable to permanent modifications of custody, the district court failed to consider whether it would be in the children's best interests to enforce the custody agreement and transfer custody from Mother to Father based on a stipulated divorce decree.

¶ 17 As we have discussed, however, our review is not limited to the standard bifurcated custody modification analysis. This case is procedurally distinct because it also involves petitions for temporary modification of custody under rule 106 of the Utah Rules of Civil Procedure, which permits "temporary modification of custody" "[d]uring the pendency of a petition to modify" a divorce decree. *See* Utah R. Civ. P. 106(b)(1)(B). Because the district court re-

lied on rule 106 as a basis to enforce the divorce decree, we next address application of that rule to the facts of this case.

¶ 18 Rule 106 provides that "during the pendency of [a petition to modify a divorce decree,]" "[t]he ... decree sought to be modified remains in effect." *Id.* R. 106(b)(1). Rule 106 further states that "[d]uring the pendency of a petition to modify, the court may order a temporary modification of custody ... to address an immediate and irreparable harm ..., provided that the modification serves the best interests of the child." *Id.* R. 106(b)(1)(B). Here, Mother and Father filed competing petitions for temporary modification of custody: Father's objective was to have the relocation provision of the divorce decree enforced and have custody of the children transferred to him; Mother's objective was to retain physical custody of the children, as had been the *status quo* of the custody arrangement for the past four years. The district court "grant[ed] [Father]'s motion for temporary orders, but not as such," reasoning that "a change of custody from [Mother] to [Father] is not a modification of the decree" but was instead "enforcement of the decree" and explained that its decision was to "enforce ... the decree ... [and] not [grant] a temporary order." The district court thus denied Mother's petition for temporary modification, reasoning that it did not "see any immediate or irreparable harm ... regardless of which parent has these children in his or her primary custody," and thus concluded that it did not "find any basis for [it] to grant temporary orders which are at variance with the existing decree."

¶ 19 In arriving at this decision, the district court characterized Father's petition as a request for enforcement of the divorce decree rather than for temporary modifica-

---

*Davis,* 749 P.2d 647, 648 (Utah 1988))). It may be worth noting, however, that both Mother and Father had already moved a considerable distance from one another within a year following their divorce: Father relocated from Iron County to Salt Lake County, and Mother moved with the children from Iron County to Washington County. Because Mother had not relocated outside of Utah, neither of these moves, which resulted in the children being hundreds of miles away from

Father, triggered the decree's relocation provision. Nor would the relocation provision be triggered were Mother to move as far away as Las Vegas. This inconsistency illustrates why this kind of stipulated custody arrangement, which amounts to a contingent, self-effectuating transfer of custody whose triggering event might occur years after entry of the decree, should be viewed skeptically.

tion of custody because the objective of Father's petition was consistent with the decree's relocation provision. The district court further characterized Mother's petition as being one for temporary modification of custody because the objective of her petition was at variance with the relocation provision in the divorce decree—and as such, Mother would be required to show that a temporary modification of the divorce decree was necessary to "address an immediate and irreparable harm," *see id.* The district court's decision was thus focused on the letter of the divorce decree rather than on the actual circumstances of the children's custodial arrangement. By enforcing the relocation provision and transferring custody of the children from Mother to Father, the district court apparently thought that because it had not temporarily modified the divorce decree, it had not "temporar[ily] modifi[ed] . . . custody," *see id.* Although perhaps technically correct in that it made no change in the provisions of the decree, the district court's decision resulted in a very real "modification of custody" from the children's perspective when their primary caretaker abruptly changed from Mother to Father. *See id.*

¶ 20 In most custody modification scenarios involving the geographical relocation of the parent designated by the decree as the child's primary custodian, the noncustodial parent's request for temporary physical custody would necessarily be a request that the court change physical custody from one parent to the other contrary to the existing terms of the decree. Under such circumstances there would typically be no distinction between enforcing the divorce decree as written and maintaining the *status quo* of the custody arrangement. In this case, however, because of the self-effectuating contingency of the relocation provision, the roles are reversed, and the parent with actual physical custody is placed in the unusual position of requesting a temporary modification of the decree to allow the existing custody arrangement to continue while her petition for a permanent change in the decree's relocation provision is litigated. In other words, because of the singular terms of this decree, Mother must petition for a temporary modification to maintain the custodial *status quo*

rather than Father seeking a temporary modification that would change the custodial *status quo*. The facts of this case thus raise the question of whether the "temporary modification of custody" contemplated by rule 106 refers to the technical modification of the custody provisions in a divorce decree or to an actual change of physical custody from one parent to another.

¶ 21 Rule 106 appears on its face to be aimed at maintaining the *status quo* of a custody arrangement, the presumption being that custody should be left undisturbed pending a petition to modify, unless a change in custody is required "to address an immediate and irreparable harm." *See id.* Interpreting the "temporary modification of custody" contemplated by rule 106 to refer to the technical modification of the custody provisions in a divorce decree is consistent with the rule's introductory language that "[t]he . . . decree sought to be modified remains in effect during the pendency of the petition" to modify. *See id.* R. 106(b)(1). But such an interpretation seems inconsistent with the rule's overarching purpose to preserve the custody *status quo*, especially in the circumstances of a case like this one where literal enforcement of the decree results in actual physical custody being transferred from one parent to the other. Under such an interpretation, the resulting change of custody would presumptively occur automatically, regardless of whether the custodial parent had been the child's long-term primary caregiver; and the resulting change of custody could only be prevented "to address an immediate and irreparable harm," *see id.* R. 106(b)(1)(B). However, interpreting the "temporary modification of custody" contemplated by rule 106 to refer to an actual change in custody is consistent with the rule's purpose, for such a reading permits a child to remain with the existing custodial parent, unless circumstances that pose an imminent threat to the child's well-being require an immediate change.

¶ 22 An interpretation favoring the actual custody *status quo* is in keeping with the overarching importance that the legislature and our courts have attached to the best interests of children caught in the rolling

waters of divorce and its aftermath, and further accords with the general policy of maintaining custodial stability to the extent it is reasonable and wise to do so while their parents seek to resolve their differences. As we have discussed, the ultimate objective of custody modification analyses is to promote the "overall best interests of the child," an objective that "should never be lost sight of." *See Elmer v. Elmer*, 776 P.2d 599, 604 (Utah 1989) (internal quotation marks omitted). Consistent with this overarching goal, rule 106 provides that a temporary modification of custody should "serve[ ] the best interests of the child." Utah R. Civ. P. 106(b)(1)(B). Moreover, even the "immediate and irreparable harm" component of rule 106 indicates that the best interests of the child are central to its application. *See id.* And our case law recognizes that it is generally in the best interests of the child to remain with his or her existing custodial parent. *See Hudema v. Carpenter*, 1999 UT App 290, ¶ 26, 989 P.2d 491 (explaining that "when [a] child is thriving, happy, and well-adjusted," a critically important factor to consider in a best interests analysis is continuity of placement with the child's primary caregiver (citing *Davis v. Davis*, 749 P.2d 647, 648 (Utah 1988))). Our case law also makes it clear that decisions regarding custody modification must not exalt form over substance; custody modification analyses must be flexible and should not be strictly and rigidly applied so as to result in custody determinations that are not in the child's best interests. *See Elmer*, 776 P.2d at 604 ("[R]ules on change in custody should not be so rigid that th[e] overarching principle [of the best interests of the child] is not followed." (internal quotation marks omitted)). Further, "[t]he important public policy to have courts ensure that a child's best interests will be met before transferring custody of the child *applies in all cases involving a change in a child's custody . . . .*" *Wright v. Wright*, 941 P.2d 646, 651 (Utah Ct.App.1997) (emphasis added). We see no reason why these crucial considerations should not apply in all custody modification cases regardless of whether the requested modification is permanent or temporary under rule 106.

¶ 23 Here, the district court, in essence, approached the matter as if no change in custody resulted from its decision because, from the perspective of the divorce decree, the custody provisions had not been modified but had been enforced. While the district court was technically correct in characterizing Father's petition as one to enforce the divorce decree and Mother's petition as one to modify the decree, the overriding consideration of rule 106 must be that "modification [should] serve[ ] the best interests of the child." *See* Utah R. Civ. P. 106(b)(1)(B). In other words, the court must view the requested modification from the perspective of the child who will be affected by the modification of custody, and the court's analysis therefore cannot be circumscribed by the bare provisions of the decree. With that in mind, it was Father's petition, not Mother's, that sought to modify the custody *status quo*, and that *status quo* should be the starting point of any best interests analysis under rule 106.

¶ 24 In summary, regardless of whether the divorce decree itself was technically modified by the district court's decision, an actual change in custody resulted when the court temporarily transferred custody of the children from Mother to Father. This change in custody was principally the result of the court's enforcement of a stipulated divorce decree with unnecessarily limited consideration of whether the resulting change was in the children's best interests. As we have discussed, such an approach is contrary to our well-established law, even had the district court been considering Mother's petition to permanently modify the divorce decree. *See supra* ¶¶ 12–16. We therefore conclude that, under the facts of this case, the district court misapplied rule 106.

## CONCLUSION

¶ 25 In applying the bifurcated custody modification analysis that is typically used in permanent custody modifications, the district court gave undue weight to the changed circumstances prong when considering a request to modify an unlitigated divorce decree and, thus, failed to consider whether a change in physical custody would be in the

children's best interests. Similarly, in applying rule 106, which governs temporary custody modifications, the district court failed to consider whether a change in the children's long-term primary caregiver, even if temporary, would be in the children's best interests. We therefore conclude that, in enforcing the divorce decree, the district court erred by failing to consider whether transferring physical custody from Mother to Father would be in the best interests of the children, and the decision was therefore beyond the bounds of the court's discretion.[5] Accordingly, we reverse and remand for further proceedings.

¶ 26 WE CONCUR: J. FREDERIC VOROS JR., and MICHELE M. CHRISTIANSEN, Judges.

---

**5.** Our conclusion here is based on the district court's failure to consider whether a transfer of custody would be in the children's best interests, and our decision should not be read to imply that we favor any particular result in the dispute between the parties. Rather, that is a decision that the district court must make on remand based on all the pertinent circumstances.