**2015 UT App 59**

# THE UTAH COURT OF APPEALS

JOSHUA STEVEN KIELKOWSKI,
Petitioner and Appellant,

*v.*

AMANDA C. KIELKOWSKI,
Respondent and Appellee.

Opinion
No. 20130225-CA
Filed March 12, 2015

Second District Court, Farmington Department
The Honorable David M. Connors
No. 114700144

Bryant J. McConkie and Adam D. Wentz, Attorneys
for Appellant

Troy L. Booher, Noella A. Sudbury, and T.R.
Morgan, Attorneys for Appellee

JUDGE STEPHEN L. ROTH authored this Opinion, in which JUDGE
JAMES Z. DAVIS concurred. SENIOR JUDGE RUSSELL W. BENCH
dissented, with opinion.[1]

ROTH, Judge:

¶1　　Joshua Steven Kielkowski (Husband) appeals from the
district court's denial of his petition to modify the divorce decree
to address custody, parent-time, and support of a child, who was

---

1. The Honorable Russell W. Bench, Senior Judge, sat by special
assignment as authorized by law. *See generally* Utah R. Jud.
Admin. 11-201(6).

born during his marriage to Amanda C. Kielkowski[2] (Mother) but who is not Husband's biological offspring. We conclude that the presumption of Husband's paternity was neither adjudicated by the district court nor conclusively rebutted by Husband's statement in his divorce filings that there were "no children at issue in this marriage." As a consequence, the district court erred in denying Husband's divorce modification petition without first addressing his parentage claim. We reverse and remand for further proceedings in accordance with this decision.

BACKGROUND

¶2    This case involves the application and effect of the presumption of parentage established by the Utah Uniform Parentage Act (the Parentage Act) in the context of a divorce modification petition. Under the Parentage Act, a rebuttable presumption arises that the husband of any woman who gives birth during the marriage is the father of the child. Utah Code Ann. § 78B-15-204(1)(a) (LexisNexis 2012).[3] The Parentage Act also prescribes the means by which that presumption can be rebutted. *Id.* § 78B-15-204(2); *id.* § 78B-15-607(3) (providing that the presumption may be rebutted through genetic testing, evidence that the mother and presumed father neither cohabited nor engaged in a sexual relationship at the time of the child's

---

2. Although Mother no longer uses the last name Kielkowski, we retain the case name *Kielkowski v. Kielkowski* here for consistency with the district court proceedings.

3. Because the pertinent provisions of the Parentage Act have not been modified since the birth of the child at issue in this case, we cite the current codification of the Utah Code Annotated for the reader's convenience.

conception, or through an adjudication that the husband is not the father).

¶3     Husband married Mother in July 2002, and they separated in 2007. During the separation, Mother became pregnant with another man's child (Child). Child was born in 2009. Husband was aware that Child was not his biological son, but he had a relationship with Child from his birth until sometime after his second birthday.

¶4     In March 2011, the parties obtained a default divorce without the benefit of counsel. Husband relied on the Online Court Assistance Program (OCAP) to prepare a verified divorce petition, from which the divorce decree automatically generated. In the verified petition, Husband represented, by checking the applicable box, that there were "no children at issue in this marriage" because he understood the OCAP questionnaire to be asking only about biological children. As a result, the final divorce decree stated simply that "[t]here are no children at issue in this marriage" and contained no provisions regarding Child's custody, parent-time, or support. Mother did not respond to the divorce petition, and the decree was granted by default.[4]

¶5     For about six months after the divorce was finalized, Mother allowed Husband to exercise parent-time with Child and Husband made regular payments to Mother that he considered to be child support. Sometime prior to April 2012, Mother initiated an adoption proceeding to allow her new husband to adopt Child. She began denying Husband access to Child in

---

4. In her acceptance of service of the petition, Mother gave her "consent that Judgment by Default may be entered against [her] at any time . . . in accordance with the terms of the Verified Divorce Petition."

January 2012 and, around the same time, started refusing Husband's child support payments.[5]

¶6    In April 2012, just over a year after the divorce was finalized, Husband filed a petition to modify the divorce decree, in which he requested that the court "modify the parties' Decree because the Decree fails to address the custody of the parties' minor child." He asked the court to rule on his rights and obligations to Child, specifically on issues pertaining to legal custody, parent-time, and child support. Mother objected, arguing that Husband was not the biological father of Child and that he had effectively rebutted the presumption of paternity when he swore under oath in the verified divorce petition that there were no children at issue.

¶7    After a hearing on the modification petition, the domestic relations commissioner recommended that the district court "not use [its] equitable powers to change the divorce decree" because Husband knew there was a child born during the marriage and yet stated in the verified divorce petition that there were no children at issue and then made no effort to establish his rights and obligations as a father to Child during the divorce proceedings. Husband objected to the commissioner's recommendation on the basis that "[t]he Decree of Divorce failed to address any issues related to the minor child, . . . who was born into the marriage, including custody and child support

---

5. Mother disagrees with Husband's characterization of his payments as child support and with his description of the circumstances that led to the termination of the payments. She contends that after Husband moved out of the marital home, his grandfather continued to reside there and Husband paid $300 a month for the grandfather's rent. According to Mother, Husband stopped making payments in September 2011 because the grandfather had moved out of the marital home.

issues." He requested a hearing before the district court. Mother responded that the district court adequately addressed the issue of children because it found, based on Husband's own representations, that there were no children at issue in the marriage.

¶8     After a hearing on Husband's objection, the district court adopted the commissioner's recommendation and denied Husband's petition to modify. The court stated that "it is undisputed that [Husband] is not the natural father of the minor child" and that although Husband and Mother "were married at the time of [Child]'s birth," Husband "prepared and signed a formal legal document under oath wherein [he] affirmatively stated there were 'no children at issue [in this] marriage,' thus rebutting the presumption that he is the legal father of [Child]." Husband appeals.

ISSUE AND STANDARDS OF REVIEW

¶9     Husband challenges the district court's decision to deny his petition to modify the divorce decree. We "generally review[] the determination to modify a divorce decree for an abuse of discretion." *Sill v. Sill*, 2007 UT App 173, ¶ 8, 164 P.3d 415 (citation and internal quotation marks omitted). However, to the extent "that determination is based on a conclusion of law," as is the case here, "we review [the modification decision] for correctness." *Id.* (citation and internal quotation marks omitted).

ANALYSIS

¶10     Husband claims that the district court erred in denying his petition to modify the divorce decree for the purpose of adding provisions for the custody and support of Child, who is legally presumed to be Husband's son under the Parentage Act. According to Husband, the failure of the default divorce decree

to take Child into account constitutes a material omission sufficient to warrant modification of the decree. The district court explained that it was denying the modification petition because Husband had effectively rebutted any presumption of parentage when he represented under oath in the verified petition for divorce that there were "no children at issue in this marriage."

¶11    Mother asserts a number of grounds for upholding the district court's decision. First, she asserts that the court already adjudicated paternity in the divorce decree's provision, based on Husband's own representation, that the marriage produced no children. Second, she argues that to overcome the res judicata effect of the adjudication, Husband had to demonstrate a substantial change in circumstances, which he did not. Mother also argues that if Husband is contending that the divorce decree contains a mistake based on Husband's sworn representation, then he was required to file a timely motion under rule 60(b) of the Utah Rules of Civil Procedure to set aside the divorce decree, which he did not do. Finally, Mother contends that even if there is a basis for modification, Husband is prohibited from asserting the presumption of parentage now because the Parentage Act required the presumption to be asserted during the divorce proceedings.

¶12    We conclude that the district court did not adjudicate Husband's paternity of Child and that the absence of any provisions pertaining to Child is a basis for modification. Accordingly, we remand for the district court to adjudicate parentage under the Parentage Act. Depending on the outcome, the court then may modify or not modify the decree as appropriate.

I. Adjudication of Parentage

¶13    Under the Parentage Act, "[a] man is presumed to be the father of a child if . . . he and the mother of the child are married

to each other and the child is born during the marriage." Utah Code Ann. § 78B-15-204(1)(a) (LexisNexis 2012). This presumption arises automatically upon the child's birth and remains in effect "until that status is rebutted or confirmed as set forth in [the Parentage Act]." *Id.* § 78B-15-102(20) (defining "[p]resumed father" as "a man, who by operation of law under [the Parentage Act], is recognized as the father of a child until that status is rebutted or confirmed as set forth in [the Parentage Act]"); *see also R.P. v. K.S.W.*, 2014 UT App 38, ¶ 12, 320 P.3d 1084 (explaining that when "a man . . . 'and the mother of the child are married to each other and a child is born during the marriage,'" a presumption arises that the man is the child's legal father (quoting Utah Code Ann. § 78B-15-204(1)(a))). Once established, this presumption can be challenged only "by the presumed father or the mother" during the course of the marriage or "in the pleadings at the time of the [parties'] divorce." Utah Code Ann. § 78B-15-607(1). To successfully rebut the presumption of paternity, the challenging party must provide

> (a) genetic test results that exclude the presumed father;
> (b) genetic test results that rebuttably identify another man as the father in accordance with [another section of the Parentage Act];
> (c) evidence that the presumed father and the mother of the child neither cohabited nor engaged in sexual intercourse with each other during the probable time of conception; or
> (d) an adjudication under this part.

*Id.* § 78B-15-607(3). When the mother is the challenging party, she must also "show by a preponderance of the evidence that it

would be in the best interests of the child to disestablish the parent-child relationship."[6] *Id.* § 78B-15-607(1)(c).

¶14 Mother contends that Husband challenged the presumption when he represented in the verified petition for divorce that "[t]here are no children at issue in this marriage" and then failed to clarify his relationship with Child before the entry of the divorce decree. She further asserts that the district court, in effect, concluded that the presumption had been successfully rebutted through the finding in the default decree that "[t]here are no children at issue in this marriage." Consequently, she argues, the court "adjudicated" parentage and Husband is now "estopped from raising the [paternity] issue." *See id.* § 78B-15-607(1)(a), (3)(d). In this regard, Mother seems to be making a res judicata argument; "[a]n issue that has been definitively settled by judicial decision," *Black's Law Dictionary* 1425 (9th ed. 2009), cannot be raised again to the court absent a substantial change in circumstances. *Taylor v. Elison*, 2011 UT App 272, ¶ 13, 263 P.3d 448 (noting that a petition to modify child custody can only be brought when there is a substantial change in circumstances not contemplated by the divorce decree because "principles of res judicata . . . 'favor the one-time adjudication of a matter to prevent the undue burdening of the courts and the harassing of parties by repetitive actions'" (quoting *Elmer v. Elmer*, 776 P.2d 599, 602 (Utah 1989))).

---

6. If either party attempts to rebut the presumption through genetic testing, "the tribunal may disregard genetic test results that exclude the presumed or declarant father if the tribunal determines that . . . it would be inequitable" or not in the child's best interest to disrupt the relationship between the child and the presumed father. Utah Code Ann. § 78B-15-608(1)(b), (2) (LexisNexis 2012).

¶15   Husband counters that he did not intentionally repudiate his presumed parentage but that he simply misunderstood the OCAP question regarding children of the marriage. Therefore, he contends, the court's finding, which was automatically generated based on his statement in the verified petition, does not amount to an "adjudication" of the parentage issue. We agree with Husband.[7]

¶16   Adjudication is "[t]he legal process of resolving a dispute." *Black's Law Dictionary* 47. Under the Parentage Act, parentage is "adjudicate[d]" when "the question of paternity has been raised in the pleadings in a divorce and the tribunal addresses the issue and enters an order." Utah Code Ann. § 78B-15-607(1)(a); *see also id.* § 78B-15-607(4) ("There is no presumption to rebut if the presumed father was properly served and there has been a final adjudication of the issue."). We addressed what it means to "adjudicate" parentage under the Parentage Act in the context of a default divorce decree in *Reller v. Reller*, 2012 UT App 323, 291 P.3d 813

¶17   In *Reller*, the district court had entered a default divorce decree that stated that the husband and the wife had one child.

---

7. Husband also contends that using his statement in the verified petition to conclusively overcome his legal presumption of paternity violates his "'fundamental liberty interest'" in raising his child, which is a right "'protected by . . . the United States Constitution.'" (Quoting *In re S.A.*, 2001 UT App 307, ¶ 12, 37 P.3d 1166.) Because we resolve this issue in Husband's favor on other grounds, we do not reach his constitutional claim. *See State v. Thurman*, 846 P.2d 1256, 1262 (Utah 1993) (noting that "'judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them'" (quoting *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988))).

*Id.* ¶ 2. The husband later moved to modify the custody arrangement. *Id.* The wife responded with her own petition to modify, in which she asserted, for the first time, that the husband was not the child's father. *Id.* She then sought to join another man—the child's actual biological father—so that he could be adjudicated as the father under the Parentage Act and be required to support the child. *Id.* ¶ 3. When the biological father entered the case, he contended that "parentage had already been adjudicated in [the parties'] divorce proceeding," *id.* ¶ 4, and that, as a result, "res judicata . . . bar[red] the new adjudication of parentage," *id.* ¶ 8. We rejected that contention on appeal. *Id.* ¶ 14. We decided that although the husband was presumptively the child's father under the Parentage Act and the parties' default decree stated that he was the father, a "perfunctor[y] recit[al] in a default divorce decree that there was one child resulting from the marriage does not elevate the question of paternity to one that 'the tribunal addresses' for purposes of the [Parentage Act] so as to estop the parties 'from raising the issue again'" in subsequent proceedings. *Id.* ¶ 13 (quoting Utah Code Ann. § 78B-15-607(1)(a) (LexisNexis 2008)). Rather, adjudication, or legal resolution, of a parentage dispute occurs only when there is "'an objective, impartial determination of the best interests of the child.'" *Id.* (quoting *Elmer*, 776 P.2d at 603); *see also* Utah Code Ann. § 78B-15-623(3) (LexisNexis 2012) ("In a proceeding to dissolve a marriage, the tribunal is considered to have made an adjudication of the parentage of a child if the question of paternity is raised and the tribunal adjudicates according to Part 6 [of the Parentage Act]."); Utah Code Ann. §§ 78B-15-607(1)(b)–(c), -608(2) (explaining that a court must consider the child's best interest in assessing whether the presumption of parentage is rebutted or confirmed).[8]

---

8. The portion of the Parentage Act that describes the contents of an order adjudicating paternity lends further support to the conclusion that a decree's statement concerning paternity that is

(continued...)

¶18    As in *Reller,* no "objective, impartial determination" of Child's best interest was ever made in this case. Neither party raised the parentage issue during the divorce proceedings, much less offered any of the evidence required by the Parentage Act to rebut or confirm the statutory presumption that Husband was Child's father. Although Husband's representation that there were "no children at issue in this marriage" may suggest he was trying to disclaim paternity, his statement did not amount to genetic proof that he was not Child's father (or that someone else was) or evidence that he and Mother did not cohabit or engage in a sexual relationship at the time of conception. *See* Utah Code Ann. § 78B-15-607(3). Moreover, Mother did not present any evidence of her own to rebut the presumption. And because the parties' approach seemed to simply pass over Child's existence rather than to place the question of his paternity squarely before the tribunal, the district court received no information to alert it that there was a child connected to the parties in any way, much less that the respondent was Child's mother and the petitioner his presumed father. Thus, the court had no notice or opportunity to consider or determine Child's needs or interest when it entered the divorce decree. It simply entered a decree by default on a form that was automatically generated from Husband's verified petition and merely reiterated Husband's representation that there were "no children at issue in this marriage." As a result, the district court judge who signed the decree never considered Child's best interest.

---

(…continued)
made by default is not an adjudication of parentage. That section requires an order adjudicating paternity to determine "whether a man alleged or claiming to be the father is the parent" and to "identify the child by name and date of birth." Utah Code Ann. § 78B-15-622(1)–(2) (LexisNexis 2012).

¶19  If we were to accept Mother's contention that the decree's automatically generated finding that the marriage produced no children constituted an adjudication of paternity, we would sanction the termination of Husband's legally presumed parental rights without compliance with the Parentage Act and, perhaps more importantly, without the benefit of judicial inquiry into the impact of termination on Child's best interest. This runs counter to the Parentage Act's specific requirements for the rebuttal of the presumption of paternity and its pervasive focus on a child's best interest as a core consideration in assessing whether the presumption has been overcome. *Id.* §§ 78B-15-607(1)(b)–(c), -608(2); *cf. R.B. v. L.B.*, 2014 UT App 270, ¶ 16, 339 P.3d 137 (observing, in the context of a default custody provision, that "parties cannot stipulate away the district court's statutory responsibility to conduct a best-interest analysis"). It also seems contrary to a stated purpose of the Parentage Act, which is "to maintain [a presumed father's] legal rights and obligations over a child" when another father is not readily identifiable. *See Reller*, 2012 UT App 323, ¶¶ 18–19 (alluding to the fact that the presumption prevents the child from being left "in the lurch" if the mother's husband is not the biological father and another man has not been adjudicated the father); *cf. Fauver v. Hansen*, 803 P.2d 1275, 1278 (Utah Ct. App. 1990) ("[T]he primary purpose of the Uniform Paternity Act," which was the predecessor of the Parentage Act but did not address presumed parentage, "is to require a child's father to pay expenses of pregnancy and child support, not to avoid such."). Accordingly, we conclude that the district court did not adjudicate Husband's paternity or address any other issues related to Child in the default divorce decree.

## II. Modification Petition

¶20  Because the district court did not adjudicate paternity, we now consider whether Husband may properly raise this issue in a modification petition. In doing so, we first address whether a modification petition is appropriate under the circumstances of

this case. Then, we address Mother's claim that the Parentage Act precludes Husband from raising his presumed parentage for the first time in a modification petition.

A.     Circumstances Warranting Modification

¶21     A party to a divorce decree may move to modify the decree only under certain conditions. This is because res judicata principles generally preclude reconsideration of issues that have previously been judicially determined. *Smith v. Smith*, 793 P.2d 407, 410 (Utah Ct. App. 1990). In the context of a custody dispute, the res judicata policy promotes stability by "protect[ing] children from the deleterious effects of 'ping-pong' custody awards" and protects parties from the burden of repetitive litigation. *Taylor v. Elison*, 2011 UT App 272, ¶ 13, 263 P.3d 448. Equity, however, allows the "courts to reopen determinations if the moving party can demonstrate a substantial change in circumstances" not contemplated by the decree itself and that modification is in the best interest of the child. *Smith*, 793 P.2d at 410. "'[T]he res judicata aspect of the [changed-circumstances] rule,'" however, is "'always . . . subservient to the best interests of the child.'" *Taylor*, 2011 UT App 272, ¶ 14 (quoting *Elmer v. Elmer*, 776 P.2d 599, 603 (Utah 1989)). And in cases where a custody issue has not yet been adjudicated by the court, "'the res judicata policy underlying the changed-circumstances rule is at a particularly low ebb' and must not be so inflexible as to categorically foreclose examination of the child's well-being." *Id.* (quoting *Elmer*, 776 P.2d at 603). The reasoning behind this principle is that "'an unadjudicated custody decree is not based on an objective, impartial determination of the best interests of the child' and 'may in fact be at odds with the best interests of the child.'" *Id.* (quoting *Elmer*, 776 P.2d at 603); *accord Smith*, 793 P.2d at 410.

¶22     Although we draw these principles from cases that involve the modification of unadjudicated *custody* arrangements rather than unadjudicated *parentage*, their statements regarding

the primacy of best interest considerations over res judicata seem equally applicable in the context presented here. As with custody decisions, best interest is a core concern of a parentage determination in a case where there is a presumed father. *See* Utah Code Ann. §§ 78B-15-607(1)(b)–(c), -608(2) (LexisNexis 2012). And, as with custody decisions, parentage is not adjudicated if the district court does not consider the child's best interest before entering the default divorce decree. *Reller v. Reller*, 2012 UT App 323, ¶ 13, 291 P.3d 813 (relying on *Elmer*, 776 P.2d at 603). Thus, it follows that the "'res judicata policy underlying the changed-circumstances rule'" must also be "'at a particularly low ebb'" in the context of a modification petition involving an unadjudicated parentage issue, so as not to "categorically foreclose examination of the child's well-being." *See Taylor*, 2011 UT App 272, ¶ 14 (quoting *Elmer*, 776 P.2d at 603); *see also Reller*, 2012 UT App 323, ¶ 13 n.4 (explaining that because "the issue of paternity was not adjudicated in the initial decree, . . . res judicata and collateral estoppel do not bar the parties from subsequently raising the issue").

¶23 Husband filed the petition to modify in this case on the basis that the default divorce decree did not adjudicate Child's parentage and left unaddressed any contingent concerns relating to custody, parent-time, or support. Utah appellate courts have previously held that when a decree does not address a significant aspect of the parties' circumstances, modification may be appropriate "to meet the need created by the absence of a provision." *Thompson v. Thompson*, 709 P.2d 360, 362 (Utah 1985) (recognizing modification as the means to remedy an omission in the decree about which party was responsible for payment of a specific debt); *see also Taylor*, 2011 UT App 272, ¶ 14 (explaining that a modification petition permits the district court to "'reopen [the divorce] decree if material facts were not before the court'" (quoting *Elmer*, 776 P.2d at 603)). Such is the case here. Because there was no adjudication of parentage, Husband's presumptive status as the legal father of Child endures, and his rights and obligations to Child ought to have been specified in the decree.

In this regard, the default decree's statement that "[t]here are no children at issue in this marriage" was inaccurate, and the decree's omission of any provisions concerning Child amounted to error. *See* Utah Code Ann. § 30-3-10(1) (LexisNexis Supp. 2014) (requiring the court to "make an order for the future care and custody of the minor children" when their parents separate). Modification of the decree to adjudicate paternity and, if necessary, to enter appropriate orders for support, custody, and parent-time is therefore necessary "to meet the need created by the absence of a provision." *See Thompson*, 709 P.2d at 362.

¶24   Mother contends that a modification petition is nevertheless an improper vehicle for changing the divorce decree under the circumstances of this case because the court's finding that there were no children produced from the marriage was based on Husband's own mistaken representation in the verified petition. Thus, she argues, Husband's only remedy was to file a motion to set aside the decree under rule 60(b)(1) of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 60(b)(1) ("On motion . . . , the court may in the furtherance of justice relieve a party . . . from a final judgment . . . [for] (1) mistake . . . ."). She further argues that even if Husband's petition to modify could properly be construed as a rule 60(b) motion, it was untimely because rule 60(b)(1) motions must be filed not more than three months after the entry of the judgment, *see* Utah R. Civ. P. 60(b)(1),[9] and Husband's petition was not filed until more than one year after the decree was entered.

¶25   If we were to accept Mother's contention that Husband's sole remedy in this case was to file a timely rule 60(b) motion,

---

9. On May 1, 2014, rule 60(b) was amended to require a rule 60(b)(1) motion to be filed "not more than 90 days after the judgment." Utah R. Civ. P. 60(b)(1). We cite the version in effect at the time of the modification petition.

we would undermine the long history of statutory and case authority that identifies a child's best interest as an indispensable consideration in making decisions about parentage, custody, and care. In other words, we would allow rule 60(b)(1)'s three-month time proscription[10] to trump the child's best interest, even in cases—such as this one—where best interest was never judicially considered. Such an approach seems to be an unjustified departure from a well-established principle supported by statute and precedent.

¶26    Mother argues that *Reller v. Reller*, 2012 UT App 323, 291 P.3d 813, offers a basis for such a deviation because in that case, we expressed agreement with the statement of one of the parties that "[r]ule 60(b) was really the only path available to set aside the [default divorce d]ecree" that treated the husband as the minor child's legal father without having first adjudicated parentage. *Id.* ¶¶ 2, 15 (internal quotation marks omitted). *Reller*, however, is distinguishable.

¶27    In *Reller*, the husband and the wife had filed a stipulated motion to vacate the default decree so that the paternity of a child born during the marriage could be adjudicated. *Id.* ¶¶ 3, 15. On appeal, the biological father argued that a motion to vacate was not an available avenue for the relief sought; rather, he contended that the husband's and the wife's remedy lay in rule 60(b). *Id.* ¶ 15. It was in this context that we agreed that a rule 60(b) motion was the appropriate means for asking the trial court to consider the unadjudicated issue of parentage in the first instance. *Id.* ¶¶ 15–17. The possibility that the husband and the wife in *Reller* could have sought to modify the default decree to adjudicate paternity was simply never presented to either the

---

10. Neither party has raised rule 60(b)(6) as a means for relief. Therefore, we do not consider whether a rule 60(b)(6) motion might be appropriate under these circumstances.

trial court or the court of appeals.[11] The only question before us was whether the trial court could properly construe the motion to vacate as a motion under rule 60(b) and, if so, whether that motion was timely. *Id.* ¶¶ 16–17. Given the circumstances of *Reller*, our "agreement" with the statement that rule 60(b) was "really the only path available to set aside the [d]ecree" does not have the precedential significance that Mother claims. *See id.* ¶ 15 (alteration in original) (internal quotation marks omitted). Accordingly, we conclude that although a rule 60(b)(1) motion might have been filed here to address the defects in the default decree, rule 60(b) is not the only remedy available to the parties under these circumstances.[12] *Cf. R.B. v. L.B.*, 2014 UT App 270, ¶¶ 41–43, 339 P.3d 137 (affirming the district court's modification of a child custody order because even though the mother had filed a rule 60(b) motion, "the district court did not rely on rule 60(b) as the procedural mechanism to address the dispute" but instead "used [the father's motion to enforce the decree] as an invitation to conduct its best interest review"). Rather, a motion for modification may be the preferred option because it is procedurally better suited to address the problem of a significant unadjudicated issue in the original decree.

---

11. The husband and the wife had each initially filed a petition to modify the default divorce decree as it related to the order of custody. *Reller v. Reller*, 2012 UT App 323, ¶ 2, 291 P.3d 813. After the husband learned that he was not the child's biological parent and the wife moved to join the actual biological father, the husband and the wife abandoned their petitions to modify and entered into a stipulated motion to set aside the default decree. *Id.* ¶ 3.

12. Because we conclude that rule 60(b) is not Husband's sole remedy, we do not address whether his petition to modify could properly be considered a rule 60(b) motion or its timeliness.

B.     Timeliness of Husband's Claim

¶28    Alternatively, Mother contends that Husband cannot raise his presumed parentage for the first time in a modification petition because the plain language of the Parentage Act requires that "[p]aternity of a child conceived or born during a marriage with a presumed father . . . may be raised by the presumed father or the mother *at any time prior to filing an action for divorce or in the pleadings at the time of the divorce* of the parents." *See* Utah Code Ann. § 78B-15-607(1) (LexisNexis 2012) (emphasis added). Husband counters that because the presumption that he was Child's father arose automatically upon Child's birth and because neither party actually challenged paternity before or during the divorce proceedings, "[n]o additional, affirmative action [was] required by [Husband] to formalize his presumed paternity." In light of the plain language of the Parentage Act and our earlier conclusion that the presumption of Husband's paternity was not rebutted, we conclude that his parentage claim is properly a subject of the petition to modify the default decree.

¶29    When interpreting statutory language, "our primary goal is to evince the true intent and purpose of the Legislature." *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863 (citation and internal quotation marks omitted). "The best evidence of the legislature's intent is the plain language of the statute itself." *Id.* (citation and internal quotation marks omitted). Moreover, "[s]tatutes should be read as a whole and their provisions interpreted in harmony with related provisions and statutes." *Martinez v. Media-Paymaster Plus/Church of Jesus Christ of Latter-day Saints*, 2007 UT 42, ¶ 46, 164 P.3d 384.

¶30    When the pertinent sections of the Parentage Act are read as a whole, Mother's argument that Husband's assertion of the presumption is untimely is not supported by the act's plain language. To the contrary, the Parentage Act creates an automatic presumption that a mother's husband is the father of any child born during their marriage. Utah Code Ann. § 78B-15-

204(1)(a). That presumption endures until rebutted. *Id.* § 78B-15-204(2). It is only when a mother or presumed father seeks to challenge this presumption that the procedural restraint comes into play: "Paternity of a child conceived or born during a marriage with a presumed father . . . *may be raised* by the presumed father or the mother *at any time prior to filing an action for divorce or in the pleadings at the time of the divorce of the parents.*" *Id.* § 78B-15-607(1) (emphasis added). Because neither party attempted to rebut the presumption that Husband was Child's father prior to or through the divorce proceedings—and we have determined that the presumption was not rebutted by the decree itself under the circumstances—the presumption that Husband is Child's legal father is still in effect. Thus, the parties may address the presumption through a modification proceeding, even though parentage was not initially raised in the divorce pleadings, because a modification petition reopens the divorce proceedings through a district court's continuing jurisdiction. *See Taylor v. Elison*, 2011 UT App 272, ¶ 14, 263 P.3d 448 (explaining that a district court may grant a modification petition and "'reopen [the divorce] decree if material facts were not before the court or if the circumstances . . . had subsequently changed'" (omission in original) (quoting *Elmer v. Elmer*, 776 P.2d 599, 603 (Utah 1989))).

¶31   We therefore remand this case to the district court to address the parentage issue. This requires the court to accept, as a baseline, that Husband is the presumed father. Either party, however, may attempt to rebut this presumption as provided under the Parentage Act.

CONCLUSION

¶32   The paternity of Child was never adjudicated by the district court during the divorce proceedings. Thus, we reverse the denial of the petition to modify and remand for the district

court to address the issue of parentage and to make any appropriate modification.

_____

BENCH, Senior Judge (dissenting):

¶33    I respectfully dissent.

¶34    Based on Husband's own representations, the default decree of divorce definitively held that there were "no children at issue in this marriage." Husband now claims he made a mistake and seeks to assert rights to a child born during the marriage.

¶35    To set aside a default judgment, a party must proceed under our rules. Rule 55(c) of the Utah Rules of Civil Procedure provides, "For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Utah R. Civ. P. 55(c). Until today, Utah courts have always held that the only way to set aside a default judgment is in accordance with the provisions of rule 60(b). *See, e.g.*, *Calder Bros. Co. v. Anderson*, 652 P.2d 922, 926 (Utah 1982); *Maxwell v. Maxwell*, 796 P.2d 403, 406–07 (Utah Ct. App. 1990); *Amica Mut. Ins. Co. v. Schettler*, 768 P.2d 950, 969 (Utah Ct. App. 1989). This black-letter principle was recently applied in the context of a case involving the Parentage Act. *Reller v. Reller*, 2012 UT App 323, ¶ 15, 291 P.3d 813 (stating that rule 60(b) is the "only path available" for setting aside a default divorce decree (internal quotation marks omitted)).

¶36    Husband has never filed a rule 60(b) motion. But even if we construe Husband's petition to modify as a rule 60(b) motion, it was clearly filed too late. Husband contends that he was mistaken in his original representation that there are no children at issue. Rule 60(b) provides that "[o]n motion and upon such terms as are just, the court may in the furtherance of justice

relieve a party . . . from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect." Utah R. Civ. P. 60(b). There are, however, strict time limitations for making such a motion: "The motion shall be made within a reasonable time and for reasons (1), (2), or (3), *not more than 3 months after the judgment*." *Id.* (emphasis added). The default decree here was entered on March 25, 2011, and Husband initiated this action more than a year later—on April 13, 2012. It was therefore not timely.

¶37    For these reasons, I would affirm the district court's denial of Husband's petition.

————————